Amy R. COUSINS, M.D.; Margaret R. Johnston; Southern Tier Women's Services, Inc., a New York Corporation; Salomon N. Epstein, M.D.; Binghamton Women's Services; The Women's Center, an unincorporated association, Plaintiffs,

v.

Randall TERRY, Individually, as President of, and d/b/a Operation Rescue, an unincorporated association; Gary Leber, Individually and as a representative of Operation Rescue; Project Life, an unincorporated association; Crisis Pregnancy Center, an unincorporated association; John Doe(s), Jane Doe(s), the last two fictitious names, the real names of said defendants being presently unknown to plaintiffs, said fictitious names being intended to designate organizations or persons who are members of defendant organizations, and others acting in concert with

**any of the defendants who are engaging in, or intend to engage in, the conduct complained of herein, Defendants.**

No. 89–CV–973.

United States District Court,
N.D. New York.

Sept. 22, 1989.

Butler Allen Clark & Place, Vestal, N.Y., Abigail F. Cousins, New York City, for plaintiffs; Earl D. Butler, of counsel.

Peter J. Hopkins, Chittenango, N.Y., John Broderick, Syosset, N.Y., A. Lawrence Washburn, Jr., Deer Park, N.Y., for defendants.

## MEMORANDUM–DECISION AND ORDER FOR PRELIMINARY INJUNCTION

McCURN, Chief Judge.

Presently before the court is a motion by the plaintiffs for a preliminary injunction to bar the defendants from engaging in an allegedly illegal effort to prevent women from obtaining abortions and family planning services at two medical facilities in Broom County, New York. An evidentiary hearing was held on September 21, 1989. The following constitutes this court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

The plaintiffs include two medical facilities, two doctors at the facilities, the management at one facility and a women's organization who are providers of abortion services in Broom County, New York. Plaintiffs also maintain that they represent the interests of women who use these facilities. The defendants are individuals and organizations who are active in the anti-abortion movement and who are allegedly

involved in a consistent pattern of illegal conduct at the two plaintiff medical clinics. Attached to the plaintiffs papers are a number of affidavits and attachments which purport to detail the anti-abortion activities of the defendants. Plaintiffs claim, for example, that the defendants have consistently blockaded the abortion clinics, trespassed on plaintiffs' property including actual occupation of offices, jammed telephone lines, engaged in disorderly conduct resulting in arrests, and screamed insulting epithets at clients and staff.

The complaint, which seeks only declaratory and injunctive relief, alleges eight causes of action. The first seven are state law claims for (1) violation of New York Civil Rights Law, § 40c and New York Executive Law § 296; (2) public nuisance; (3) tortious interference with business facilities; (4) trespass; (5) intentional infliction of emotional distress; (6) harassment, and (7) false imprisonment.

The federal question, upon which this court's jurisdiction is based, is presented in the eighth cause of action of the complaint. There, the plaintiffs assert claims pursuant to 42 U.S.C. § 1985(3) based on an alleged conspiracy to deny women seeking abortion or family planning services the equal protection of the laws and the equal privileges and immunities of national citizenship. As stated in paragraph 44 of the complaint:

> Defendants conspired together with each other and other parties presently unknown for the purpose of denying women seeking abortions and other family planning services at targeted facilities the equal protection of the laws and the equal privileges and immunities under the law and obstructing travel, in violation of 42 U.S.C. § 1985(3). Defendants are and continue to be motivated by an invidiously discriminatory animus directed at the class of women seeking to exercise their constitutional and legal right to choose abortions and other family planning services at the targeted facilities.

With respect to the federal claims, plaintiffs assert that women traveling interstate to receive abortion services have been af-fected by the defendants' actions. Complaint at para. 16. Moreover, plaintiffs claim that defendants, by their actions, seek to prevent responsible state and local officials from enforcing civil rights laws, thereby "causing state authorities to violate the New York State Constitution and the 14th Amendment to the Constitution of the United States." Complaint para. 19.

This action was initiated on August 9, 1989, when the plaintiffs sought and received a temporary restraining order from this court enjoining the defendants from engaging in a threatened blockade action on August 9–11 of 1989. The TRO expired on August 21, 1989, when the court, after a hearing, refused to extend the TRO based on the fact that defendants had complied with the order until that time. On August 24, 1989, the plaintiffs again sought and received a TRO due to actions by certain defendants, on August 23, 1989, which included a sit-in demonstration and driveway blockade of plaintiff Epstein's office. The court granted plaintiffs' request for an extension of the temporary restraining order on September 6th after having heard the defendants' objections to such an extension.

### Discussion

#### Standing

■ At oral argument on September 21, 1989, the defendants for the first time raised the issue of whether the plaintiffs have standing to represent the interests of women who seek to use the plaintiff medical facilities. Defendants assert that by not producing a single woman denied access to a clinic due to the defendants' activities, plaintiffs have failed to allege a justiciable controversy. The defendants are in error. In the recent decision, *N.Y. State National Organization for Women v. Terry*, 886 F.2d 1339, 1346–1348 (2nd Cir.1989), the Second Circuit held that health care providers have independent standing to assert the rights of their patients to travel freely and to obtain abortion services. The court reasoned that a patient's "enjoyment of those rights is 'inextricably bound up with the activity the litigant wishes to pur-

sue,'" and thus, the court could be "assured that the clinics represent the rights and interests of the women seeking their assistance." *Id.* at 1347; *see Singleton v. Wulff,* 428 U.S. 106, 114, 118, 96 S.Ct. 2868, 2876, 49 L.Ed.2d 826 (1976). Therefore, the plaintiffs have standing to bring this suit.

*Preliminary Injunction*

The standard for the issuance of a preliminary injunction in this circuit is well settled. "The party seeking the injunction must show a risk of irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make a fair ground for litigation and a balance of hardships tipping in the movant's favor." *Johnson v. Kay,* 860 F.2d 529, 540 (2nd Cir.1988). In general, a deprivation of constitutional rights which cannot be repaired by an award of damages, constitutes irreparable injury. *See Abdul Wali v. Coughlin,* 754 F.2d 1015, 1027, (2nd Cir.1985); *see also Buffalo Courier Express v. Buffalo Evening News,* 601 F.2d 48, 57 (2nd Cir.1979).

*The 42 U.S.C. § 1985(3) Claim*

Plaintiffs' claim pursuant to 42 U.S.C. § 1985(3) is the logical starting point for any legal analysis because it is the sole federal question upon which the jurisdiction of the court is based. The complaint asserts that an action pursuant to § 1985(3) is cognizable in this court due to the defendants invidiously discriminatory conspiracy to deprive a class of pregnant women of the constitutional rights of travel and to terminate a pregnancy.

There are four essential elements to a cause of action under 42 U.S.C. § 1985(3): (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States. *See Griffin v. Breckenridge,* 403 U.S. 88, 102–03, 91 S.Ct. 1790, 1798, 29

L.Ed.2d 338; *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. 825, 828–829, 103 S.Ct. 3352, 3355–56, 77 L.Ed.2d 1049 (1983). Moreover, where the right which is allegedly being violated is solely a right against state interference, such as a Fourteenth Amendment right, the plaintiff must also plead and prove that the conspiracy involved state action of some sort. *Id.* 463 U.S. at 830–35, 103 S.Ct. at 3357–59.

*Right to Travel*

Plaintiffs allege that approximately 15 to 20% of the patients seen at the plaintiffs' clinics are out-of-state residents who travel to Broom County, New York, for consultation and medical services. And, that these women, have had their ability to enter the clinics and receive services impeded by the actions of the defendants.

The Supreme Court has long held that the right to interstate travel "is constitutionally protected, does not necessarily rest on the Fourteenth Amendment, and is assertable against private as well as governmental interference." *Griffin v. Breckenridge,* 403 U.S. 88, 105, 91 S.Ct. 1790, 1800, 29 L.Ed.2d 338 (1971) (citing *Shapiro v. Thompson,* 394 U.S. 618, 629–31, 89 S.Ct. 1322, 1328–29, 22 L.Ed.2d 600; *United States v. Guest,* 383 U.S. 745, 757–60 and n. 17, 86 S.Ct. 1170, 1177–79 and n. 17, 16 L.Ed.2d 239; *Twining v. New Jersey,* 211 U.S. 78, 97, 29 S.Ct. 14, 18, 53 L.Ed. 97; *Slaughter–House Cases,* 16 Wall. 36, 79–80, 21 L.Ed. 394 (1872)). In *Breckenridge* the court held that completely private interference with interstate travel was actionable through 42 U.S.C. § 1985(3) because "[t]he 'right to pass freely from State to State' has been explicitly recognized as 'among the rights and privileges of National Citizenship.'" 403 U.S. at 106, 91 S.Ct. at 1800. This right includes the right to unimpeded travel between states to obtain an abortion and other medical services. *Doe v. Bolton,* 410 U.S. 179, 200, 93 S.Ct. 739, 751, 35 L.Ed.2d 201 (1973) ("Just as the Privileges and Immunities Clause, Const. Art. IV, § 2, protects persons who enter other states to ply their trade ... so must it protect persons who enter [a state]

seeking the medical services that are available there. . . . A contrary holding would mean that a State could limit to its own residents the general medical care available within its borders. This we could not approve.").

*Conspiracy*

■ A conspiracy is within the scope of § 1985(3) only if it is motivated by a class-based, invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. at 102, 91 S.Ct. at 1798; *United Brotherhood of Carpenters & Joiners v. Scott,* 463 U.S. at 834–35, 103 S.Ct. at 3359. Though the Supreme Court has yet to rule on the matter, the majority of federal courts who have addressed this issue, including now the Second Circuit, have held that gender based animus satisfies the conspiracy requirement of section 1985(3), *see N.Y. State National Organization for Women v. Terry, supra* at 1359–61. *Volk v. Coler,* 845 F.2d 1422, 1434 (7th Cir.1988); *Novotny v. Great American Fed. Sav. & Loan Ass'n,* 584 F.2d 1235, 1243–44 (3rd Cir. 1978), *vacated on other grounds,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979); *Roe v. Operation Rescue,* 710 F.Supp. 577, 581. Thus, this court holds that women seeking abortions constitute a class entitled to protection under § 1985(3), and that a conspiracy to deprive women seeking abortions of the equal protection of the laws and the equal privileges and immunities of national citizenship is actionable under § 1985(3).

*Findings of Fact*

The plaintiffs operate two clinics in Broom County, New York, one in the City of Binghamton and the other in the Town of Vestal, where patients are consulted and treated respecting pregnancy and abortion. Approximately fifteen percent (15%) of the women treated at these facilities travel from outside of New York state.

Evidence was presented at the hearing with respect to the activities of certain of the defendants in blockading the ingress and egress to these facilities. However, insufficient evidence was introduced concerning the involvement of two of the defendants, namely Project Life and Crisis Pregnancy Center, for this court to direct a preliminary injunction as against them. Therefore, when this court discusses the acts of "the defendants" it is only concerned with the activities of Randall Terry the president of Operation Rescue, Operation Rescue, Gary Leber, and certain "John Doe(s)" and "Jane Doe(s)" which are fictitious names intended to designate organizations or persons who are members of defendant organizations or who are acting in concert with the defendants.

For many years, and continuing until today, the two plaintiff clinics have been the subject of anti-abortion protests which involved rallies, picketing, sidewalk counseling, and leafleting which could be described as normal First Amendment activity. However, on many occasions the defendants have engaged in actions which go beyond mere protests and involve efforts to prevent the operation of the medical facilities through the physical blockade of their entrance ways. These actions included:

* On January 6, 1986, the office of Southern Tier Women's Services, ("STWS") where Dr. Cousins practices, was invaded by seven or eight people who barricaded themselves into one of the procedure rooms, chained themselves together and refused to leave until forced to do so by the police. Defendant Randall Terry was identified as one of the participants in this action.

* On January 30, 1986, defendant Terry and nine others entered the waiting room of STWS, approached patients, and stated such things as "don't murder your baby." The protesters refused to leave when requested to do so by the clinic's staff and had to be removed by the police.

* On April 26, 1986, thirteen demonstrators entered STWS's waiting room. One invader jumped through an opening in the reception window and opened the newly installed security door to permit entrance of the other protestors. Thereafter, the demonstrators blockaded themselves in rooms, chained themselves to equipment, and refused to leave until

removed by the police. According to the testimony, Randall Terry was seen on the perimeter of STWS's property yelling encouragement.

* In June of 1986 the employees of STWS arrived at work to find the private parking lot of the facility being filled with cars in an effort to block the ability of persons to enter or leave the clinic. This involved the parking of a van against the door of the clinic so that the door could not be opened. The drivers of the cars would lock the cars and remove the keys. The parking lot had to be cleared by the police.

* In November of 1987 there were a series of events wherein the locks to STWS's doors were filled with "crazy glue" so that employees could not enter the facility until a lock smith opened the doors.

* In January of 1988 there was another car blockade of STWS. Cars were parked in a manner where persons wishing to enter the facility would have had to climb over the cars. At this point the name "Operation Rescue" had become well known to the plaintiffs as the group which was involved in the blockade activities. Defendants Randall Terry and Gary Leber were observed directing the car blockade by witnesses for the plaintiffs.

* In September of 1988, there was a sit-in blockade of STWS's doorways in which sixteen persons were arrested and removed by the police.

* On October 28, 1988, there was a major sit-down demonstration in which about 130 people ran down an embankment into the parking lot of STWS and attempted to blockade the facility. Though volunteer escorts were able to provide access for a few women seeking to enter the facility, the doors were effectively blocked for at least three hours. According to the testimony, this action was publicly planned by Operation Rescue. Both Randall Terry and Gary Leber were identified as participants in these actions.

* On January 11, 1989, four persons carried a large block of cement into the offices of BWS and chained themselves to each other and the cement block. This effectively obstructed the entrance way to the waiting room. The police had to cut the chains and physically remove the demonstrators.

* On April 20th of 1989 there was an incident where a man entered the waiting room of STWS and asked the receptionist "how many babies had Dr. Cousins killed today." This man had to be escorted out by the police. Two other women entered the waiting room and were refused a pregnancy test, and thereafter, entered the bathroom and defaced it with anti-abortion slogans.

* On July 25 and 26 of 1989 there were major blockade protests at the BWS location. All the outside entrance ways to BWS were blocked by rotating groups of approximately 200 sit-in demonstrators. There were over 40 arrests. Witnesses identified both Randall Terry and Gary Leber as persons who were directing the blockade. According to the undisputed testimony, this action was coordinated by Operation Rescue.

As noted above, this court issued a temporary restraining order to prevent the defendants from engaging in a threatened blockade on August 9–11 of 1989. The TRO expired on August 21st; at a hearing on that date the court denied plaintiffs' request for an extension of the TRO on the basis that the defendants had not engaged in any illegal blockade-type demonstrations in contravention to this court's August 9, 1989 TRO. However, on August 23, 1989, about fourteen demonstrators entered the premises of BWS and blockaded the doorways to the facility. Five of these persons chained themselves together at an entrance way within the building. At approximately the same time two cars were driven into the entrance of the parking lot of BWS, locked, and tires flattened to make removal more difficult. The following day this court again granted the plaintiffs a TRO enjoining the defendants from engaging in such activity.

On many of these occasions the operation of the two plaintiff facilities was effectively stopped or greatly reduced. Women who were seeking to enter the clinics were

barred from doing so by the blockade demonstrations which were planned by Operation Rescue. There was testimony to the effect that many of the women who did gain entrance to the facility were traumatized by the ordeal of having to be escorted past and over demonstrators who frequently shouted insulting epithets. If fifteen percent of the women who use these facilities travel from out of state, it is clear that women who are engaged in interstate travel have had there access blocked by the actions of the defendants.

## Conclusion

The facts presented at the evidentiary hearing reveal that women have traveled from out of state to receive abortion services at the plaintiff facilities and that the physical blockades engaged in by the defendants have operated to obstruct access to abortion clinics for women seeking abortions. Moreover, the physical blockades are part of an organized activity to interfere with the ability of this class of women to travel freely. The court finds that plaintiffs have shown that: (1) defendants Randall Terry, Gary Leber, Operation Rescue and certain John and Jane Doe(s) conspired; (2) for the purpose of depriving women seeking abortions in Broom County, New York, of their constitutional right to travel; and (3) that said defendants blockaded plaintiff clinics in furtherance of the conspiracy; (4) thereby injuring these women or depriving them of their rights as citizens of the United States.

Therefore, this court holds that the plaintiffs have sufficiently established all four elements of a claim pursuant to 42 U.S.C. § 1985(3) for the issuance of a preliminary injunction. The plaintiffs have shown the existence of a risk of irreparable harm together with a likelihood of success on the merits. Having made this determination on the basis of plaintiffs claim concerning the right to travel, this court defers consideration of the other issues until trial.

Accordingly, it is hereby

ORDERED, that defendants Randall Terry, Gary Leber, Operation Rescue and certain John and Jane Doe(s), the last two fictitious names, the real names of said defendants being presently unknown to plaintiffs, said fictitious names being intended to designate organizations or persons who are members of defendant organizations, and their officers, agents, servants, employees and attorneys, and those persons in active concert and participation with them, are preliminarily enjoined pending disposition of this matter on the merits, from

(1) trespassing on, blocking, or obstructing ingress into or egress from any facility at which abortions are performed in Broome County, New York; and

(2) physically abusing or tortiously harassing persons entering, leaving, working at, or using any services at any facility at which abortions are performed in Broome County, New York; provided, however, that sidewalk counseling, consisting of reasonably quiet conversation of a nonthreatening nature by not more than two people with each person they are seeking to counsel shall not be prohibited. Also provided that no one is required to accept or listen to sidewalk counseling and that if anyone who wants to, who is sought to be counseled wants to not have counseling, wants to leave, walk away, they shall have the absolute right to do that. In addition, provided that this right to sidewalk counseling as defined here shall not limit the right of the Police Department to maintain public order by reasonably necessary rules and regulations as they decide are necessary at each particular demonstration site; and further provided that nothing in this order shall be construed to limit Operation Rescue participants' exercise of their legitimate First Amendment rights.

The defendant Operation Rescue and its officers, and the defendant individuals and those working in concert with them, are directed to instruct all members of the organization and conspiracy believed to be planning to participate in the activities enjoined in paragraphs (a) and (b) above of the terms of this order.

IT IS SO ORDERED.