847 F.Supp. 1070 (1994)
Michelle CATANZANO, by her parent and next friend, Sam CATANZANO, et al, Plaintiffs,
v.
Michael DOWLING, as Commissioner of the New York State Department of Social Services and Richard Schauseil, as Acting Director of the Monroe County Department of Social Services, Andrew Doniger, M.D., as Director of the Monroe County Department of Health, Defendants,
Richard SCHAUSEIL, as Acting Director of the Monroe County Department of Social Services, and Andrew Doniger, M.D., as Director of the Monroe County Department of Health, Third-Party Plaintiffs,
v.
Michael DOWLING, as Commissioner of the New York State Department of Social Services, and Mark Chassin, as Commissioner of the New York State Department of Health, Third-Party Defendants.
No. 89-CV-1127L.
United States District Court, W.D. New York.
March 31, 1994.
*1071 *1072 *1073 *1074 Ellen Yacknin Monroe County Legal Assistance, Rochester, NY, for plaintiffs.
John P. Costello, James L. Gelormini, Asst. Atty. Gen., Rochester, NY, for defendant.
LARIMER, District Judge.
This is an action brought under Title XIX of the Social Security Act, commonly known as the Medicaid Act, 42 U.S.C. §§ 1396 et seq. Plaintiffs seek declaratory and injunctive relief against the Commissioner of the New York State Department of Social Services and the Director of the Monroe County Department of Social Services for violations of the Medicaid Act, federal regulations implementing the Medicaid Act and various New York State statutes and regulations. Specifically, plaintiffs claim that two recently enacted New York State statutes relating to home health care services, N.Y.Soc.Serv.Law § 365-a(2)(d) and § 367-j [fiscal assessment] and N.Y.Soc.Serv.Law § 367-o [instruments for home care assessment], and their implementing regulations, violate the requirements of the Medicaid Act. Plaintiffs claim that this Court should enjoin the State and its subdivisions and direct that they comply with the requirements of federal law when dealing with Medicaid-funded home health care services for the poor.
Before the Court are plaintiffs' motion for preliminary injunction and defendant Michael Dowling's cross motion for summary judgment. Because I believe that serious violations of federal law have occurred, and continue to occur, an injunction must issue to guarantee that those who are less fortunate and must rely on Medicaid for health services, receive the full panoply of rights guaranteed to them under federal law before losing their health care benefits. Therefore, plaintiffs' motion for a preliminary injunction is granted and Dowling's motion is denied.

PROCEDURAL BACKGROUND
This action was commenced on August 25, 1989, as a class action against the Director of the Monroe County Department of Social Services and the Director of the Monroe County Department of Health ("County defendants"). The original complaint alleged that the County defendants had failed to comply with federal and state laws and regulations pertaining to home health care services, especially concerning the treatment of plaintiff, Michelle Catanzano. The original complaint alleged that the County defendants had failed to provide written notices of changes in Catanzano's home health care services without the approval of her treating physician, thereby violating plaintiffs' due process rights under 42 U.S.C. § 1396a(a)(3), 42 CFR §§ 431.206, 431.210, 431.220, 435.912 and 435.919(a), N.Y.Soc.Serv.Law § 22, and 18 NYCRR §§ 358-3.1(b)(2)(iv), (b)(6), 358-3.3(a)(2), and 505.14(b)(5)(v) and (viii).
On October 17, 1989 ("1989 Decision"), I granted Michelle Catanzano's motion for a preliminary injunction and ordered the County defendants to provide her with the level of home health care prescribed by her treating physician, unless and until a contrary directive was issued pursuant to state regulations concerning home health care services or the fair hearing process mandated by N.Y.Soc.Serv.Law § 22.
On April 25, 1990 ("1990 Decision"), plaintiffs were certified as a class for purposes of this action pursuant to Fed.R.Civ.P. 23(a) and (b)(2). The class was defined as all recipients of Medicaid in Monroe County who receive home health care, and who now or in the future receive less home health care than that level of care ordered by their treating physician.
On October 9, 1990, an amended third-party complaint was filed against the Commissioner of the New York State Department of Social Services and the Commissioner of the New York State Department of Health ("State defendants").
Since entry of my prior decisions in 1989 and 1990, New York State has twice amended the laws governing Medicaid-funded home health care services. In June 1991, the state amended the laws relating to home health care and these new provisions ("the 1991 Amendments") allow termination or denial of *1075 home health care benefits, if the cost of home health care exceeds 90% of the cost of institutionalizing that individual. N.Y.Soc.Serv. Law §§ 365-a(2)(d) and 367-j. The certified home health agency ("CHHA")[1] responsible for providing home health care to the patient is now required to conduct a "fiscal assessment" to determine the cost-effectiveness of home health care services as compared to institutional health care services. Based on this financial review, the patient's home health care services could be completely eliminated.
In April 1992, the state once again revised the home health care laws ("the 1992 Amendments"), this time mandating the adoption of "instruments" for use throughout the state for determining eligibility and screening of applicants for and recipients of home health care. N.Y.Soc.Serv.Law § 367-o.
As a result of the 1991 Amendments and the 1992 Amendments, plaintiffs sought leave to file an amended complaint. I granted plaintiffs' leave to file an amended complaint on April 1, 1993 ("1993 Decision"), and suggested that their class definition be modified in light of the proposed amended complaint. I suggested that the new class definition encompass recipients of and applicants for home health care in New York State who have been or will in the future be deprived of their federal constitutional rights through the operation of the 1991 and 1992 Amendments to the laws and regulations governing Medicaid-funded home health care in New York State.
An amended complaint was filed on April 7, 1993, defining the class as suggested in my 1993 Decision.
On December 16, 1993, the pending motion for a preliminary injunction was filed by plaintiffs because of recent actions taken against several named recipients of Medicaid whose home health care services were modified or terminated without receiving what plaintiffs believe to be proper notice and a right to a hearing under the Medicaid Act and its implementing regulations. Plaintiffs maintain that the 1991 and 1992 Amendments, on their face and as implemented, violate their constitutional due process rights as well as rights provided by the Medicaid Act and its implementing regulations.
The next day, on December 17, 1993, I issued a temporary restraining order directing defendants, pending determination of the preliminary injunction motion, "to provide written notices conforming to the requirements of 42 C.F.R. sections 431.210, 431.206(b), 431.211, and 435.919, and an opportunity for a fair hearing to every applicant and recipient class member for whom home health care services are denied or adversely determined following a fiscal assessment."
On December 30, 1993, plaintiffs filed a motion to hold the State defendants in contempt for willful failure to comply with the terms of the temporary restraining order and to compel the State defendants to comply with the Court's order.
The Court held a hearing on the motion for a preliminary injunction on January 11, 1994 and additional materials were submitted at that time on the motions.
Defendants oppose the motion for a preliminary injunction and the State defendants have filed a cross-motion for summary judgment. Defendants deny that the notice and hearing rights advocated by plaintiffs are required and, in the alternative, defendants maintain that the 1991 and 1992 Amendments provide adequate notice and fair hearing rights where required. In addition, the State defendants contend that plaintiffs lack standing to challenge the 1991 and 1992 Amendments and that since plaintiffs have failed to properly modify their class definition, the present motion for injunctive relief is improper.

DISCUSSION

I. Standing.
"It is axiomatic that the judicial power conferred by Article III may not be exercised unless the plaintiff shows `that he personally has suffered some actual or threatened *1076 injury as a result of the putatively illegal conduct of the defendant'." Blum v. Yaretsky, 457 U.S. 991, 999, 102 S.Ct. 2777, 2783, 73 L.Ed.2d 534 (1982) (quoting Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 99, 99 S.Ct. 1601, 1607-08, 60 L.Ed.2d 66 (1979)).
This general rule applies equally to class actions by requiring that "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 675, 38 L.Ed.2d 674 (1974).
Generally, a plaintiff satisfies the standing requirement if he has "a personal stake in the outcome of the controversy, as measured by a distinct and palpable injury, which is causally connected to the conduct being charged against the defendant." Comer v. Kemp, 824 F.Supp. 1113, 1120 (W.D.N.Y.1993) (citing Allen v. Wright, 468 U.S. 737, 770, 104 S.Ct. 3315, 3334, 82 L.Ed.2d 556 (1984)). See also Whitmore v. Arkansas, 495 U.S. 149, 155, 110 S.Ct. 1717, 1723, 109 L.Ed.2d 135 (1990) (plaintiff must allege an injury which is distinct and palpable, actual or imminent, and fairly traceable to the challenged action).
The State defendants maintain that none of the named plaintiffs in this action have suffered an injury as a result of the 1991 and 1992 Amendments. They contend that Michelle Catanzano is exempt from the provisions of the 1991 and 1992 Amendments because she is a special education student and that the other named plaintiffs, Mary Jane Smith and Charles Smith ("the Smiths"), have not alleged any injury at all. As a result of this lack of "injury in fact," the State defendants maintain that the named plaintiffs have no standing to proceed with this action, and therefore, no injunction should issue.
The gravamen of plaintiffs' amended complaint is that defendants' practices and policies deprive them of their federal and constitutional rights. (Amended Complaint ¶ 1). Specifically, plaintiffs contend that as recipients of Medicaid they do not receive adequate notice of adverse actions taken concerning their level of care, that they do not receive proper notice of the right to challenge the action by way of a fair hearing and that they do not continue to receive their existing level of care and services pending the outcome of the hearing ("aid-continuing"). Plaintiffs allege that these rights and procedures are mandated by the Constitution and by federal law and federal regulations. (Amended Complaint ¶ 121-125).
While the amended complaint does address the 1991 and 1992 Amendments, plaintiffs' claims in the amended complaint are not limited solely to those recent enactments. Plaintiffs also contend that defendants provide less home health care services than ordered by the patients' treating physicians without providing adequate notice, hearing rights and aid-continuing. (Amended Complaint ¶ 8). The 1991 and 1992 Amendments are an example of defendants' practices and policies which plaintiffs claim violate their rights.
Plaintiffs have alleged that they are being provided with less home health care services than ordered by their treating physicians, that this reduction was done without adequate notice, without the opportunity for a fair hearing and without the opportunity for aid continuing. (Amended Complaint ¶ 24, 29, 31, 68, 70, 71, 72, 84, 85, 86). These allegations are more than sufficient to confer standing on the named plaintiffs.
To the extent that Catanzano and the Smiths have not been injured as a result of the 1991 and 1992 Amendments, this does not prohibit them from representing the class or having standing. Catanzano and the Smiths have a personal stake in the outcome of this litigation and have been injured by the conduct being charged against the defendants. Those allegations are sufficient to confer standing. Whitmore, supra; Comer, supra.
In addition, however, the Smiths do allege that if the procedures outlined in the 1991 and 1992 Amendments were applied to them, their home health care would be reduced. (Amended Complaint ¶ 75, 89). They allege *1077 that this reduction would occur without adequate notice and the opportunity for a hearing and aid continuing. (Amended Complaint ¶ 80, 94).
It is not necessary for plaintiffs to allege that they have suffered actual injury in order to have standing to challenge a statute. Butts v. City of N.Y, 779 F.2d 141, 149 n. 5 (2d Cir.1985), cert. denied, 478 U.S. 1021, 106 S.Ct. 3335, 92 L.Ed.2d 740 (1986). Plaintiffs have standing to challenge a statute based solely on its anticipated effects, Id., as long as it is sufficiently alleged that these anticipated effects will lead to actual injury which can be fairly traceable to the challenged statute. See Heldman v. Sobol, 962 F.2d 148, 154 (2d Cir.1992) (plaintiff must allege personal injury or threat of injury); Santiago v. Miles, 774 F.Supp. 775, 788 (W.D.N.Y.1991) ("To establish standing, a litigant must show actual or threatened injury."); Rovira v. AT & T, 760 F.Supp. 376, 379 (S.D.N.Y.1991).
By alleging that the 1991 and 1992 Amendments will be applied to them and would likely deprive them of their federal and constitutional rights when applied, the Smiths have standing to challenge these amendments, and I have already so ruled in my 1993 Decision. See 1993 Decision at 12 ("Plaintiffs have adequately alleged the likelihood of direct injury traceable to the implementation of the 1991 and 1992 amendments").
In addition, a favorable decision in this action would benefit the Smiths by requiring defendants to provide adequate notice, hearing rights and aid-continuing should implementation of the 1991 and 1992 Amendments require a termination, reduction or suspension of their home health care services. See Lujan v. Defenders of Wildlife, ___ U.S. ___, ___, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (standing conferred when it is likely that plaintiffs will be redressed by a favorable decision).
In any event, it is not necessary that "each and every issue be raised by each and every member of the class or class representatives ..." United Nat'l Records, Inc. v. MCA, Inc., 101 F.R.D. 323, 328 (N.D.Ill.1984) (quoting Vulcan Society of Westchester County v. Fire Dep't of White Plains, 82 F.R.D. 379, 401 (S.D.N.Y.1979)).
In sum, plaintiffs are challenging what they believe to be unconstitutional procedures utilized by defendants relative to adverse actions taken with respect to plaintiffs' home health care services. Catanzano and the Smiths have standing to represent the class.

II. Class Certification.
A class was certified in this action on April 25, 1990. It was defined as "all recipients of Medicaid in Monroe County who receive home health care, and who now or in the future receive less home health care then most recently ordered by their treating physicians." 1990 Decision at 13.
On August 21, 1992, plaintiffs moved for leave to file an amended complaint and to modify the class definition to permit the class representatives to represent a state-wide class of applicants for and recipient's of Medicaid-funded home health care services.
Fed.R.Civ.P. 23(c)(1) states:
As soon as practicable after the commencement of an action brought as a class action, the court shall determine by order whether it is to be so maintained. An order under this subdivision may be conditional, and may be altered or amended before the decision on the merits.
Class certification decisions by their nature are conditional, and a court has the power to alter or modify the class description if subsequent events suggest that it is appropriate to do so. Levy v. Scranton, 780 F.Supp. 897, 905 (N.D.N.Y.1991).
A court cannot, however, modify a class certification once a decision on the merits has been made. Zenith Labs. Inc. v. Carter-Wallace Inc., 530 F.2d 508, 512 (3d Cir.), cert. denied, 429 U.S. 828, 97 S.Ct. 85, 50 L.Ed.2d 91 (1976); In re Catfish Antitrust Litigation, 826 F.Supp. 1019, 1043 (N.D.Miss.1993); Pottinger v. City of Miami, 720 F.Supp. 955, 960 (S.D.Fla.1989).
Plaintiffs move to modify the class definition to include recipients of and applicants *1078 for Medicaid-funded home health care in New York State who have been or will in the future be deprived of their federal and constitutional rights.
In their amended complaint, plaintiffs defined the class as "constituting all applicants for and recipients of Medicaid-funded home health care services in New York State who have been or will in the future be deprived of their federal statutory and constitutional rights through the operation of the 1991 and 1992 amendments to the laws and regulations governing Medicaid-funded home health care in New York State." (Amended Complaint ¶ 5). That definition, although referenced by the Court in my 1993 Decision, was never ordered and decreed to be the appropriate class definition. Therefore, this class is still defined as "all recipients of Medicaid in Monroe County who receive home health care, and who now or in the future receive less home health care than most recently ordered by their treating physicians," and it is this certification which plaintiffs seek to modify.
The State defendants initially contend that a preliminary injunction is inappropriate because a proper class has not been certified to reflect the definition of the class contained in the amended complaint. In addition, the State defendants contend: (1) that the current proposed class definition is inappropriate because "[a] class can not be defined by generally referring to class members as all persons whose rights have been violated by the challenged practices." (State defendants Memorandum of Law at 19); (2) that the named plaintiffs cannot represent a class of applicants for Medicaid funded home health care because they are all recipients of Medicaid funded home health care; and (3) that a class should not be certified in this action because it is inappropriate to certify a class in an action for declaratory and injunctive relief when the relief sought would benefit all proposed class members.
First, a class certification is not necessary prior to issuing a preliminary injunction. McGlothlin v. Connors, 142 F.R.D. 626, 641 (W.D.Va.1992) (citing Sanford v. R.L. Coleman Realty Co., 573 F.2d 173, 178 (4th Cir.1978)). A decision on class certification should be made "[a]s soon as practicable after the commencement of an action," Fed. R.Civ.P. 23(c)(1), but can be determined and finalized as late as entry of a decision on the merits if circumstances warrant. Banks v. Secretary of the Indiana Family & Social Servs. Admin., 790 F.Supp. 1427, 1430 (N.D.Ind.1992), aff'd, 997 F.2d 231 (7th Cir. 1993) (citing Jimenez v. Weinberger, 523 F.2d 689, 698-99 (7th Cir.1975), cert. denied, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976)). Therefore, the fact that there might be some unresolved matters with respect to class certification, does not, in and of itself, prevent the Court from granting a preliminary injunction. McGlothlin, 142 F.R.D. at 641; Sanford, 573 F.2d at 178.
In any event, a class has already been certified in this action. See April 25, 1990 Decision (granting plaintiffs' motion for class certification pursuant to Fed.R.Civ.P. 23(c)). Before the Court is a motion to "modify" the class definition not to certify a new class. "The court has the power to alter the class description if events subsequent to the original certification suggest that it is appropriate to do so." Levy v. Scranton, 780 F.Supp. 897, 905 (N.D.N.Y.1991).
Questions on class certification, including modification of the class definition, are left to the sound discretion of the court. Shipes v. Trinity Indus., 987 F.2d 311, 316 (5th Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993); Walker v. Jim Dandy Co., 747 F.2d 1360, 1363 (11th Cir.1984); Werner v. Satterlee, Stephens, Burke & Burke, 797 F.Supp. 1196, 1213 (S.D.N.Y.1992): Thomas v. Clarke, 54 F.R.D. 245, 249 (D.Minn.1971).
The State defendants' first contention with respect to the proposed class definition is that it is too general because it merely refers to class members whose rights have been violated by the challenged practices. "Although not specifically mentioned in Rule 23(a), a class must be sufficiently definite in order to warrant certification." Stolz v. United Bhd. of Carpenters & Joiners, 620 F.Supp. 396, 403 (D.Nev.1985); Elliott v. ITT Corp., 150 F.R.D. 569, 573-74 (N.D.Ill.1992).
*1079 A class definition is too general when "it would require the court to determine whether a person's constitutional rights had actually been violated in order to determine whether that person was a class member." Hagen v. City of Winnemucca, 108 F.R.D. 61, 63 (D.Nev.1985). Plaintiffs' proposed class definition does not require the Court to determine whether a class member's constitutional rights have been violated and, therefore, is not too general.
The State defendants' second contention with respect to the proposed class definition is that the named plaintiffs cannot represent a class of Medicaid "applicants" for home health care because all are Medicaid "recipients," that is, they currently receive Medicaid benefits. According to the State defendants, because the named plaintiffs are Medicaid recipients they have not suffered the injuries claimed by Medicaid applicants.
The practices and policies which are being challenged in this action are identical for recipients and applicants alike. There is no evidence before me which suggests that the 1991 and 1992 Amendments do not apply to applicants or that applicants are receiving notice, hearing rights and, where appropriate, aid-continuing. Therefore, because plaintiffs have been subject to, or threatened with implementation of the challenged practices, they have standing to represent not only recipients of Medicaid funded home health care, but also applicants for Medicaid funded home health care. See Griffin v. Dugger, 823 F.2d 1476 (11th Cir.1987), cert. denied, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988) (named plaintiff must have suffered the same type injury of those he purports to represent) (emphasis added).
The State defendant's third contention with respect to the proposed class definition is that certification is inappropriate in this action because plaintiffs do not seek monetary relief and the declaratory and injunctive relief which is sought would benefit all proposed class members.
"Where retroactive monetary relief is not at issue and the prospective benefits of declaratory and injunctive relief will benefit all members of a proposed class to such an extent that the certification of a class would not further the implementation of the judgment, a district court may decline certification." Davis v. Smith, 607 F.2d 535, 540 (2d Cir.1978). See also Berger v. Heckler, 771 F.2d 1556, 1566 (2d Cir.1985) (Certification not necessary when relief would benefit all members of a proposed class).
However, those courts that have declined to certify a class under these circumstances "do not merely assume that defendants will comply with the terms of the injunction on a class-wide basis." Cason v. Rochester Housing Authority, 748 F.Supp. 1002, 1010 (W.D.N.Y.1990). Positive assurance regarding future compliance with the injunction as to other class members is required. Id.; Doe v. Coughlin, 697 F.Supp. 1234, 1235 n. 4 (N.D.N.Y.1988); Calkins v. Blum, 511 F.Supp. 1073, 1089-90 (N.D.N.Y. 1981), aff'd, 675 F.2d 44 (2d Cir.1982).
In their memorandum of law in support of their motion for summary judgment, the State defendants appear to offer this type of assurance by stating that there should be no class certification "where, as here, the declaratory and injunctive relief sought would benefit all proposed class members." (State defendants' Memorandum of Law at 19). For now I will maintain the class certification in this action until a more definite assurance is made, either by stipulation, discussion on the record, or letter, that the Court's decision in favor of plaintiffs would be enforced and applied throughout the state to all members of the proposed class.
Plaintiffs' motion to modify the class definition is granted. Plaintiff's class is defined as: All New York State recipients and applicants of Medicaid-funded home health care who receive less home health care than most recently ordered by their treating physician or who have had their home health care suspended, denied, terminated or reduced without prior notice, right to a fair hearing and aid-continuing as mandated by 42 C.F.R. 431.200-431.250.

III. Preliminary Injunction.
The standards for obtaining a preliminary injunction are well established in *1080 this Circuit. The moving party must show that it is likely to suffer possible irreparable injury and "either (1) a likelihood of success on the merits of its case or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balancing of hardships in its favor." Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir.1990) (quoting Coca-Cola Co. v. Tropicana Products, Inc., 690 F.2d 312, 314-15 (2d Cir.1982)). See also Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir.1979); New York v. Nuclear Regulatory Comm'n, 550 F.2d 745, 750 (2d Cir. 1977).
Where a preliminary injunction "`seeks to stay governmental action taken in the public interest pursuant to a statutory or regulatory scheme,' the less rigorous fair-ground-for-litigation standard should not be applied." Sweeney v. Bane, 996 F.2d 1384, 1388 (2d Cir.1993) (quoting Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir.1989)).
"[T]he single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." Bell & Howell: Mamiya Co. v. Masel Supply Co., 719 F.2d 42, 45 (2d Cir.1983) (quoting 11 C. Wright & A. Miller, Federal Practice & Proc., § 2948 at 431 (1973)). See also Loveridge v. Pendleton Woolen Mills, Inc., 788 F.2d 914, 918 (2d Cir.1986).
Irreparable harm means injury which is actual and imminent and which cannot be adequately compensated by a monetary award. Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2d Cir.1989); Jackson Dairy, 596 F.2d at 72.
Irreparable harm must first be demonstrated before any of the other requirements for the issuance of an injunction are considered. Reuters Ltd., 903 F.2d at 907. In the absence of a showing of irreparable harm, a motion for preliminary injunction should be denied. J.S.G. Trading Corp. v. Tray-Wrap, Inc., 917 F.2d 75, 80 (2d Cir.1990); Sierra Club v. Hennessy, 695 F.2d 643, 647 (2d Cir.1982).
Generally, "for preliminary injunction purposes ... harm arising from a possible deprivation of ... constitutional rights" that cannot be rectified by an award of damages is sufficient to demonstrate irreparable harm. Covino v. Patrissi, 967 F.2d 73, 77 (2d Cir.1992); Mitchell v. Cuomo, 748 F.2d 804, 806 (2d Cir.1984); Pro-Choice Network of Western N.Y. v. Project Rescue Western N.Y., 799 F.Supp. 1417, 1428 (W.D.N.Y.1992); Cousins v. Terry, 721 F.Supp. 426, 429 (N.D.N.Y.1989).
On this preliminary injunction motion, plaintiffs seek an injunction and a declaration concerning the fiscal assessment procedures outlined in New York Social Services Law § 367-j on the grounds that the statute on its face, and as applied, violates Medicaid applicants' and recipients' federal statutory and constitutional rights. The State and County defendants maintain that plaintiffs cannot show a likelihood of success on the merits because they have failed to show that their statutory and constitutional rights have been violated by the fiscal assessment procedures. It is undisputed, however, that if plaintiffs' constitutional rights are being violated, they have met their burden of showing irreparable harm. Therefore, a review of the requirements of federal law concerning termination of Medicaid benefits with the challenged state statute, regulations and procedures is necessary to determine whether a preliminary injunction is appropriate.

A. Federal Statutes and Regulations.

The Medicaid Act authorizes a state's participation in a cooperative federal-state Medicaid program. A state's participation is not mandatory, but once it elects to participate, the state medical assistance plan ("state plan") must comply with federal statutes and regulations. See Caldwell v. Blum, 621 F.2d 491, 494 (2d Cir.1980); Hillburn v. Maher, 795 F.2d 252 (2d Cir.1986), cert. denied, 479 U.S. 1046, 107 S.Ct. 910, 93 L.Ed.2d 859 (1987); Meyers v. Reagan, 776 F.2d 241 (8th Cir.1985); Feld v. Berger, 424 F.Supp. 1356, 1360 (S.D.N.Y.1976). See also Oregon Ass'n of Homes for the Aging, Inc. v. Oregon Dep't of Human Resources, 5 F.3d *1081 1239, 1241 (9th Cir.1993) ("participation by states [in the Medicaid program] is voluntary, but if states elect to participate, they must comply with requirements imposed by the Medicaid Act and federal regulations"); North Carolina Dep't of Human Resources v. United States Dep't of Health & Human Servs., 999 F.2d 767, 768 (4th Cir.1993) (states must ensure compliance with federal regulations); Bethpage Lutheran Serv., Inc. v. Weicker, 965 F.2d 1239, 1240 (2d Cir.1992) (participating states must comply with requirements imposed by the Medicaid Act and regulations promulgated by the Secretary of Health and Human Services).
New York State participates in the Medicaid program, therefore, its state plan must comply with federal statutes and regulations. 42 U.S.C. § 1396a(a)(3) requires that a state plan provide for an opportunity for a fair hearing to any individual whose claim for medical assistance is denied or not acted upon with reasonable promptness. 42 U.S.C. § 1396d(a)(7) includes home health care in its definition of medical assistance.
Federal regulations at 42 C.F.R. 431.200 through 431.246, have been adopted whose purpose is to implement that section of the Medicaid Act "which requires that a State plan provide an opportunity for a fair hearing to any person whose claim for assistance is denied or not acted upon promptly." 42 C.F.R. § 431.200. Section 431.200 specifically provides that the regulations also prescribe procedures to obtain a hearing and for notice "if the Medicaid agency takes action to suspend, terminate, or reduce services."
Plaintiffs claim that this right to a hearing is mandated by federal regulation if the Medicaid agency takes any action to either deny the initial application for benefits or to "suspend, terminate, or reduce services" presently enjoyed by a recipient.[2]
The federal regulations are elaborate and require the Medicaid agency to maintain a "hearing system" that complies with the regulations and it specifically provides that this hearing system must meet "the due process standards set forth in Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) ...", 42 C.F.R. § 431.205.
The Goldberg court held that "the fundamental requisite of due process of law is the opportunity to be heard, ... at a meaningful time and in a meaningful manner" before public assistance payments are terminated. Goldberg, 397 U.S. at 267, 90 S.Ct. at 1020. These principles "require that a recipient have timely and adequate notice detailing the reasons for a proposed termination." Id. at 267-68, 90 S.Ct. at 1020. Further, "the recipient must be allowed to retain an attorney if he so desires ... [and] the decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing." Id. at 270-71, 90 S.Ct. at 1022.
In addition, the federal regulations require that the Medicaid agency must publicize its hearing procedures, § 431.206(a), provide advance notice to applicants and recipients of benefits explaining the proposed adverse action, and set forth the reason for the intended adverse action and the regulation supporting it, §§ 431.210 and 431.211.
These provisions are not optional. Section 431.202 clearly provides that the state plan must provide for the requisite notice and hearing.
Under federal regulation, the State Medicaid agency must provide a proper notice to the patient informing him of the proposed change and his right to a hearing both at the time that the individual initially applies for Medicaid and at any time the Medicaid agency takes "any action affecting his claim." 42 C.F.R. § 431.206(c)(2). See also 42 C.F.R. *1082 § 431.210. The term "action" is defined for purposes of the regulation to mean "a termination, suspension or reduction of Medicaid eligibility or coverage services." 42 C.F.R. § 431.201.
The patient's right to a hearing is further underscored in § 431.220. That section provides that the agency "must" grant the opportunity for a hearing to "any recipient" who requests the hearing because he believes the agency "has taken an action erroneously." 42 C.F.R. § 431.220(a)(2). Again, the word "action" is defined as any "termination, suspension, or reduction of Medicaid eligibility or covered services." 42 C.F.R. § 431.201.
In my view, these federal regulations could not be clearer. A state Medicaid agency must comply with these notice and hearing requirements in order to comply with federal law as a condition of its participation in the Medicaid program.

B. New York State's Fiscal Assessment Program.

N.Y.Soc.Serv.Law § 367-j requires that a certified home health agency ("CHHA") conduct a fiscal assessment of the cost-effectiveness of home health services when compared to residential health care facility services for recipients receiving home health care services for more than sixty continuous days. N.Y.Soc.Serv.Law § 367-j(1)(a). The purpose of this section is to "further define eligibility and conditions for payment in order to both approve recipient access to appropriate home health care and promote efficient use of local resources." 1991 N.Y.Laws 165 at § 20.
In determining cost-effectiveness the CHHA must compare the estimated average monthly cost of home health care that the Medicaid agency reasonably anticipates the recipient will require for twelve months to 90% of the average monthly cost of services in a residential health care facility. N.Y.Soc. Serv.Law § 367-j(1)(a).
If the CHHA estimates that the average monthly cost of home health care that a recipient will require is equal to or less than 90% of the average monthly cost of services in a residential health care facility, then the CHHA must continue to provide home health care services to the recipient, provided that the services are medically necessary. N.Y.Soc.Serv.Law § 367-j(1)(d).
If the CHHA determines that the average monthly cost of home health care services that a recipient will require exceeds 90% of the average monthly cost of residential health care facilities services, then the CHHA must review the enumerated "exception criteria" to determine whether the recipient is nonetheless entitled to home health care services in spite of its cost or whether the recipient must be referred to other appropriate long-term care services. N.Y.Soc. Serv.Law § 367-j(1)(e). There are several "exceptions" listed which the CHHA must consider in determining whether the recipient is entitled to home health care services regardless of whether the cost would exceed 90% of the average monthly cost of services in a residential health care facility. These "exception criteria" are set forth at N.Y.Soc. Serv.Law § 367-j(1)(e)(i)-(v).
If the CHHA determines that the recipient meets at least one exception criterion, it must continue to provide home health care services and it must notify the appropriate local Social Services district of that decision. N.Y.Soc.Serv.Law § 367-j(1)(f)(i).
Under this framework, the recipient's subjection to the fiscal assessment would not seem to implicate any due process rights since, if the CHHA determines that home health care should continue despite the high cost, then the recipient has not been adversely affected. Care or services would not be terminated, suspended or reduced as contemplated by the federal regulations. See 42 C.F.R. § 431.201.
The situation is different, however, when the CHHA determines that the recipient does not qualify under any of the statutory exceptions. This circumstance is covered at N.Y.Soc.Serv.Law § 367-j(1)(f)(ii). The statute provides that when the CHHA makes the determination that no exception applies, it must notify the local Social Services district and must continue to provide home health services but only until appropriate long-term *1083 care services are available. By the terms of the statute, when the Social Services district receives notification from the CHHA that the patient no longer qualifies for home health care services, the Social Services district must review the CHHA's fiscal assessment and its determination that no exception applies. N.Y.Soc.Serv.Law § 367-j(1)(g). The Social Services district may make an independent assessment or remand the matter to the CHHA for a reassessment. N.Y.Soc. Serv.Law § 367-j(2)(h).
If the Social Services district and the CHHA agree that the "amount, duration, or scope of home health services must be modified" then the CHHA "must" modify the services accordingly. N.Y.Soc.Serv.Law § 367-j(1)(i)(ii).
It is under this circumstance, that is, where the CHHA and the Social Services district agree that home health care should be modified or suspended, that plaintiffs believe their rights under federal law to advance notice and the right to a hearing is violated. This circumstance is at the heart of this litigation.
If the CHHA and the local Social Services official disagree as to whether home health care services should continue, then the matter must be referred to the "local professional director" for his review. N.Y.Soc.Serv. Law § 367-j(1)(i)(iv). The local professional director must then review both the CHHA's fiscal assessment and determination and the Social Services district's review of that fiscal assessment and the local professional director is charged with making the "final determination" as to the recipient's continued eligibility for home health care services.
The only reference in this legislation to a "fair hearing" is contained at N.Y.Soc.Serv. Law § 367-j(1)(j) which reads as follows:
The home health services recipient is entitled to a fair hearing in accordance with section twenty-two of this chapter, only when he or she disagrees with the final determination of the local professional director or the social services official.
Regulations have been adopted to implement the fiscal assessment provisions of § 367-j. Section 505.23 of Title XVIII of the New York Code of Rules and Regulations ("NYCRR") provides the framework for conducting fiscal assessments.
According to the regulations, it is the policy of the Social Services Department to pay for home health services only when certain conditions are met including a fiscal determination that the cost will be less than 90% of the average monthly cost of residential health care, unless the recipient meets one of the statutory exception criteria. 18 NYCRR § 505.23(a)(1).
An initial fiscal assessment must be conducted for each recipient currently receiving home health care services from a CHHA. 18 NYCRR § 505.23(c)(3). Subsequent fiscal assessments must be conducted after each successive six month period. 18 NYCRR § 505.23(c)(6)(i).
If it is determined that a recipient does not meet one of the exception criteria then the CHHA must notify the Social Services district, the recipient, and the recipient's physician of its determination within five business days. 18 NYCRR § 505.23(c)(9)(iii)(a). Once the Social Services district receives notification from the CHHA, it must refer the recipient's case to the local professional director if it disagrees with the determination of the CHHA. 18 NYCRR § 505.23(c)(11)(i)(c).
The regulations also provide that a Social Services district must refer a recipient's case to the local professional director when the Social Services official and a CHHA representative or a recipient's physician disagree. 18 NYCRR § 505.23(c)(11)(iv)(a).
Like the controlling statute, the state regulations provide for a "fair hearing" in only limited circumstances. A recipient is entitled to a fair hearing only when home health care services have been discontinued or reduced pursuant to a final determination of the local professional director. 18 NYCRR § 505.23(d)(1).
Under these circumstances, the Social Services district is required to notify the recipient of the local professional director's determination to discontinue or reduce the recipient's home health care services and of the recipient's rights to request a fair hearing *1084 and to continue receiving home health care services pending the hearing. 18 NYCRR § 505.23(d)(2).

C. State Defendants' Compliance With Federal Statutes and Regulations.

The State Defendants do not contend that they are not obligated to comply with federal law as a participating state in the federal Medicaid program. Their position appears to be that the statutory and regulatory procedures relating to fiscal assessments are adequate to satisfy those rights guaranteed by federal law and regulation. I must disagree. In my view, a review of the federal statute and regulations concerning notice and hearing rights demonstrates that the fiscal review statute, § 367-j, as written, and the implementing regulations, 18 NYCRR 505.23, do not comply with federal law. Furthermore, it is clear from Administrative Directives ("ADM") issued by the Commissioner of Social Services to county Social Services officials that the statute and the implementing regulations are not being interpreted and carried out in a fashion to provide recipients with those rights mandated by federal law.
It is true that under certain circumstances a recipient of home health care is entitled to a fair hearing prior to termination or reduction of benefits. It is also clear, however, that these rights are not afforded to all recipients who face modification or suspension of their home health care benefits because of an adverse action precipitated by the fiscal assessment process.
As discussed above, there is no statutory provision for a patient to receive either notice of the adverse decision or an opportunity to request a hearing if his home health care services are reduced because both the CHHA and the Social Services district agree on the recommended reduction. N.Y.Soc. Serv.Law § 367-j(1)(i)(ii). The state regulation, at 18 NYCRR § 505.23(c)(11)(iii)(b) & (c), adds a requirement that the recipient's physician must be consulted prior to effecting the home health care modification. However, on the facts submitted to me on this motion, it appears that the State is not complying with this regulation and routinely fails to consult the treating physician prior to effecting the home health care services modification. In any event, even if the treating physician is "consulted" that does not comply with federal requirements that a Medicaid recipient must himself receive notification of an adverse action and proper notification of his right to contest that decision at a hearing.
The statute, N.Y.Soc.Serv.Law § 367-j, on its face, fails to provide for any notice or right to a hearing to a recipient whose home health care is reduced because the CHHA and the Social Services district agree to that course of action.
On the papers submitted to me on the motion, this circumstance affects, or could affect, a large number of recipients. This is especially the case since at least in some parts of the state, in effect, CHHA's are making the actual determination concerning reduction of home health care services since some Social Services districts seem to have routinely acquiesced in CHHA decisions. See Declaration of Valarie Bogart, Attorney for Legal Services for the Elderly, at ¶ 11. Under such circumstances, due to the Social Services districts' apparent abrogation of their responsibility, a CHHA could unilaterally reduce home health care services without affording the patient any notification or any hearing. This practice contravenes the clear directive of federal law and basic due process rights delineated in Goldberg v. Kelly, supra, that prior to any adverse action, the patient must receive a notice indicating the action to be taken, the reasons for the action and the regulations that support such action. 42 C.F.R. §§ 431.210 and 431.211.
It does appear that if the CHHA and the Social Services district disagree then the matter must be referred to the local professional director for a final determination. Under these circumstances, the statute, N.Y.Soc.Serv.Law § 367-j(1)(j), does provide for a "fair hearing" when the patient disagrees with the final determination of the local professional director. The fair hearing is required to be conducted in accordance with § 22 of N.Y.Soc.Serv.Law, and regulations enacted pursuant to that section, 18 NYCRR § 358.
*1085 The State defendants contend that the process comports with federal requirements because "under state law a ... recipient's case is always referred to an independent physician (the local professional director) when his treating physician disagrees with any proposed adverse action. (State Defendants' Memorandum of Law at 16) (emphasis in original). Although the statute does not provide for any reference to the treating physician, the state relies on 18 NYCRR § 505.23(c)(11)(iv) which does provide that the case must be referred to the local professional director when either the Social Services official, the CHHA or "a recipient's physician" disagree as to the term of home health care.
First of all, federal rules do not speak in terms of notifying the treating physician, but speak to notification of the patient himself. But, regardless of what the state regulations purport to provide, in fact, on the evidence before me, it does not appear that notification is routinely given to the recipient's treating physician. See Affidavit of Maryjane Wurth, Vice-President of Healthcare Association of New York State, at ¶ 10.
Implementing directives from the Department of Social Services provide damning evidence that the State defendants do not recognize that a fair hearing is required if the treating physician disagrees.
An Administrative Directive, referred to as 92 ADM 50, issued December 1, 1992, describes the only circumstances under which a recipient may obtain a fair hearing. It reads as follows:
A recipient of home health services is entitled to a fair hearing only when the recipient's home health services have been discontinued or the amount, scope, or duration of the home health services has been reduced as a result of the final determination of the local professional director or his or her designee.
92 ADM 50, at p. 26.
This ADM provides that the matter should be referred to the local professional director only under circumstances set forth in statute, that is, when the Social Services director and the CHHA disagree as to the extent to which home health care services should be provided. 92 ADM 50 at p. 21.
The proof before me demonstrates that recipients receiving Medicaid have in the recent past been threatened with the reduction of home health care services based solely on a determination of the CHHA without the recipient receiving any advance notification of such action or any opportunity for a fair hearing as mandated by federal statutory law and federal regulation.
Further proof of the policy of the State defendants on this issue is a hearing decision provided to the Court from an administrative law judge of the Department of Social Services. Under a subheading entitled "Applicable Law" the administrative law judge states:
Specifically, a home health services recipient is entitled to notice, aid-continuing, and an opportunity for a fair hearing only under the following scenario: a certified home health agency (CHHA) has conducted a fiscal assessment pursuant to § 505.23(c), the CHHA has notified the Social Services districts of the results of the fiscal assessment, including whether the CHHA has determined that the recipient's home health care services are appropriate, must be reduced, or must be continued, the district disagrees with the CHHA's determination, the district forwards the recipient's case to the local professional director, and the local professional director determines that the recipient's home health services must be discontinued or reduced. In re Appeal of Mattie Dais, N.Y.S. Dep't of Soc.Serv., FH# 2056034J (Dec. 21, 1993) at p. 2. (Emphasis added).
The law is clear that the defendants must comply with federal law and provide plaintiffs with notice, hearing rights and aid-continuing, where appropriate. On the evidence submitted on this motion, I find that defendants are not complying with federal laws. The fact that the State defendants can point to certain regulations, specifically 18 NYCRR § 505.23(c)(11)(iv)(a), that appear to require notice and a hearing under certain circumstances mandated by federal law does not end the inquiry into whether plaintiffs' rights have been violated. The defendants must comply with federal law and such compliance *1086 is not had with regulations that are not followed. See United States v. Caceres, 440 U.S. 741, 751 n. 14, 99 S.Ct. 1465, 1471, 59 L.Ed.2d 733 (1979) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures."); Morton v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974) (same). The evidence submitted to the Court on this motion suggests that those regulations that might appear to require notice and hearing rights are not being followed. See Affidavit of Eyvette Dais at ¶ 6; Declaration of Valarie Bogart at ¶ 14; Affidavit of Maryjane Wurth at ¶ 10; Declaration of Lynda Brenner, President of the Discharge Planning Association of New York City, at ¶ 8; Affidavit of Elaine Wolbrom, Social Work Manager at Long Island Jewish Medical Center, at ¶ 2.

IV. Remedy.
Having considered the submitted materials and the arguments of counsel, I find that a preliminary injunction is warranted.
In accordance with Rule 65(d), the following describes the terms of the injunction, the acts to be restrained and the parties affected by this preliminary injunction:
It is hereby ORDERED that the State and County defendants are enjoined and restrained from:
(1) suspending, terminating or reducing the amount of home health care services received by members of plaintiffs' class as a result of conducting a fiscal assessment or otherwise, without first providing for notice, the right to a fair hearing and aid-continuing as mandated by, and consistent with all the requirements of, 42 C.F.R. §§ 431.200-431.250;
(2) implementing the fiscal assessment procedures outlined in N.Y.Soc.Serv.Law § 367-j, 18 NYCRR § 505.23 and 92-ADM-50 until new procedures are developed and implemented which provide members of plaintiffs' class with notice, the right to a fair hearing and aid-continuing as mandated by 42 C.F.R. §§ 431.200-431.250; and
It is further ORDERED that the State and County defendants must:
(1) ensure that local social services districts and CHHAs do not suspend, terminate or reduce the amount of home health care services received by members of plaintiffs' class without first providing for notice, the right to a fair hearing and aid-continuing as mandated by 42 C.F.R. §§ 431.200-431.250; and
(2) take immediate steps to provide notice and hearing rights to members of plaintiffs' class who have had their home health care services suspended, terminated or reduced without the benefit of notice, the right to a hearing or aid-continuing since November 15, 1993; and
It is further ORDERED that the process and procedures mandated by this injunction be implemented immediately but, in no event, no later than fifteen (15) days after entry of this order.

CONCLUSION
Plaintiffs' motion for a preliminary injunction is granted and Dowling's motion for summary judgment is denied. Plaintiffs' motion to hold the State defendants in contempt is denied, without prejudice.
IT IS SO ORDERED.
NOTES
[1] A certified home health agency is defined as a home care services agency which possesses a valid certificate of approval and which is authorized to provide a long term home health care program. N.Y.Pub.Health Law § 3602(3).
[2] Federal law requires that a state "provide the opportunity for a fair hearing to any person whose claim for assistance is denied or not acted upon promptly ... [and] an opportunity for hearing if the Medicaid agency takes action to suspend, terminate, or reduce services." 42 C.F.R. § 431.200. To the extent that plaintiffs maintain that notice, hearing rights and aid-continuing are mandated by federal law whenever any action is taken, irrespective of whether or not it suspends, reduces or terminates services to a Medicaid applicant or recipient, that notion is explicitly rejected. Logic dictates that only a detrimental change in a recipient's level of care constitutes "agency action" as that term is defined in 42 C.F.R. § 431.201. See Granato v. Bane, 841 F.Supp. 64, 71 (N.D.N.Y.1994).