**Michelle CATANZANO, Francine Catanzano, Sam Catanzano, Sara Trafton, on behalf of herself and all persons similarly situated, Plaintiffs–Appellees,**

**Janine Wilson, Mary Jane Smith, Charles Nmi Smith, Intervenors–Plaintiffs– Appellees,**

v.

**Brian WING, as Acting Commissioner of the New York State Department of Social Services and Barbara DeBuono, as Commissioner of the New York State Department of Health, Defendants–Appellants.**

No. 89–CV–1127L.

United States District Court, W.D. New York.

Feb. 4, 1998.

Elizabeth L. Schneider, Monroe County Legal Assistance Corp., Rochester, NY, Bryan D. Hetherington, Public Interest Law of Rochester, Rochester, NY, for Michele Catanzano, Francine Catanzano, Sam Catanzano and Sara Trafton.

James L. Gelormini, Office of the New York State Attorney General, Rochester, NY, for Gregory D. Kaladjian.

Mark T. Walsh, Gleason, Dunn, Walsh & O'Shea, Albany, NY, amicus Home Care Ass'n.

Eileen M. Considine, Hinman, Straub, Pigors & Manning, P.C., amicus Visiting Nurse Service of New York Home Care.

Peter G. Bergmann, Cadwalader, Wickersham & Taft, New York City, amicus Metropolitan Jewish Geriatric Center.

Dorothy Siemon, Bruce Vignery, American Ass'n of Retired Persons, Washington, DC, amicus American Ass'n of Retired Persons.

## DECISION AND ORDER

LARIMER, Chief Judge.

On September 20, 1995, this court issued a Decision and Order adopting a final plan to fully implement a preliminary injunction that the court had issued on March 31, 1994. *Catanzano v. Dowling*, 900 F.Supp. 650, 652 (W.D.N.Y.1995). On December 23, 1996, the Court of Appeals for the Second Circuit affirmed that judgment, except as to one issue (103 F.3d 223).

The Court of Appeals held that it did not consider in its prior July 13, 1995 decision in the case (60 F.3d 113), whether federal law, specifically the so-called "Freedom of Choice" law, 42 U.S.C. § 1396a(a)(23), conflicted with the New York Medicaid Program obligating home health care providers to provide care in certain circumstances. My assumption that the Second Circuit had so ruled was determined to be erroneous and the Court of Appeals remanded the case on that issue alone.

The Court of Appeals' remand directive was as follows:

We affirm the judgment of the district court, except to the extent that it assumed that our prior opinion in this case had decided the question of whether federal law precludes a state from obligating its home health care providers to give care in certain circumstances against their will. We vacate that portion of the district

court's judgment that so held and remand for consideration of that question anew.

This Decision and Order constitutes my ruling on that issue.

## DISCUSSION

█ Familiarity with the several prior decisions of both this court and the Court of Appeals in this case is assumed. The issue now before me stems from Medicaid's "freedom of choice" law, 42 U.S.C. § 1396a(a)(23). That statute provides that a Medicaid claimant may obtain services from any qualified provider "who undertakes to provide him such services ..." A 1991 regulation promulgated by the Health Care Financing Administration ("HCFA") based upon this section also states that "a recipient may obtain Medicaid services from any [qualified provider] that is ... [w]illing to furnish them to that particular recipient." 42 C.F.R. § 431.51(b)(1)(ii). In an explanation of this regulation, the HCFA states that it had "added language to counteract a misunderstanding that has arisen in the past: freedom of choice does not obligate a Medicaid provider to furnish services to every recipient. Within specified limits, a recipient may seek to obtain services from any qualified provider, but the provider determines whether to furnish services to the particular recipient." 56 Fed.Reg. 8835 (1991). The HCFA stated that this was consistent with the reference in § 1396a(a)(23) to a provider "who undertakes to provide him such services." *Id.* Defendants interpret these provisions to mean that if a CHHA concludes that treatment is not medically necessary, it cannot be forced to provide treatment, even after a professional director or fair-hearing decision had determined that the recipient should receive such treatment.

As the Second Circuit noted in its 1996 decision in this case, " '[t]here is no [clear] precedent in this circuit or in any other circuit on' the question of 'whether this provision of the Social Security Act [42 U.S.C. § 1396a(a)(23)] creates a right enforceable by' Medicaid providers." *Catanzano,* 103 F.3d at 232 (quoting *Silver v. Baggiano,* 804 F.2d 1211, 1217 (11th Cir.1986)). Nonetheless, although the Eleventh Circuit in *Silver*

found it unnecessary to decide this issue, it aptly observed that "[a]s with the Medicaid statute as a whole, § 1396a(a)(23) was intended to benefit Medicaid recipients," and that "there is no indication in the language that health care practitioners are given any rights by this provision." *Silver,* 804 F.2d at 1216–17 (footnote omitted). *See also RX Pharmacies Plus, Inc. v. Weil,* 883 F.Supp. 549, 553–54 (D.Colo.1995) (concluding that § 1396a(a)(23) was intended to protect Medicaid recipients, and does not confer any enforceable rights on Medicaid providers).

After reviewing the prior decisions in this case and the parties' submissions, however, I find defendants' interpretation of § 1396a(a)(23) unpersuasive. First, the legislative history of this section, like that of the Medicaid statutes in general, indicates that it is intended to confer rights upon health care recipients, not providers. The Senate Report on the 1968 amendments that added subsection (a)(23) states that the Medicaid statutes had been amended to "[a]llow recipients free choice of qualified providers of health services ..." S.Rep. No. 744 (1967), *reprinted in* 1967 U.S.C.C.A.N. 2834, 2838. The report goes on to say that the amendments were intended to provide that "people covered under the medicaid program would have free choice of qualified medical facilities and practitioners," *id.* at 2868, and that "[u]nder [ § 1396a(a)(23)], an individual is to have a choice from among qualified providers of service." *Id.* at 3021. The legislative history gives no indication that Congress intended to confer upon providers a right to refuse to accept particular recipients.

Moreover, to adopt defendants' position would eviscerate much of what this court as well as the Court of Appeals have written about CHHAs' status as state actors. In its 1995 decision in this action, the Second Circuit expressly "reject[ed] the State's argument that the CHHA's determinations should not be deemed state action." *Catanzano,* 60 F.3d at 119. The court observed that "the CHHAs are not 'independent actors doing business with the state,' but are entities that assumed the 'responsibility for [the State's] mandated health care duties.'" *Id.* at 120

(quoting *J.K. By and Through R.K v. Dillenberg,* 836 F.Supp. 694, 697–98 (D.Ariz.1993)).

In its most recent decision, the Court of Appeals likewise rejected defendants' attempt to limit the scope of its prior holding that CHHAs are state actors with respect to certain specific types of determinations. The court stated that its 1995 decision "necessarily compels the conclusion that CHHAs are also state actors in being bound by the results of administrative hearings overturning their determinations. The CHHA is 'the state' at the fair hearing, and must therefore be required to shoulder 'the state's' burden if it loses at that hearing." *Catanzano,* 103 F.3d at 228.

I realize that the CHHAs' status as state actors does not in itself answer the question now before me, *i.e.,* whether the freedom of choice law bars the State from forcing CHHAs to accept patients. To hold that it does, however, would make meaningless the State's obligations to provide care under the Medicaid statutes. As I stated in my 1995 decision, "the State cannot relieve itself of the obligation to provide home health care to eligible applicants merely because a CHHA does not wish to provide care. ... The State's 'responsibility' [to provide care] would provide cold comfort to the applicant if that responsibility could be evaded simply by delegating these decisions to CHHAs." *Catanzano,* 900 F.Supp. at 652.

■ It is a fundamental rule of statutory construction that courts should avoid an interpretation of a statute that renders any part of it superfluous, or that creates an inconsistency between two parts of the statute. *In re Colonial Realty Co.,* 980 F.2d 125, 132 (2d Cir.1992); *State of Nevada v. Watkins,* 939 F.2d 710, 715 (9th Cir.1991). Applying defendants' interpretation of the statute, however, the Medicaid laws would on the one hand require states to provide care in certain circumstances, yet at the same time permit them to nullify that obligation by allowing CHHAs to refuse to accept patients. It is illogical to think that Congress could have intended such a result.

To the extent that a health care provider must be "willing" to treat patients, then, I find that the Medicaid statutes simply allow providers to decide whether to *participate* in the Medicaid program in the first place. They are free not to do so. If they do participate, however, they are bound by certain obligations, including compliance with federal, state, and local laws. *See* 42 C.F.R. § 484.12(a). In addition, the federal Medicaid statutes mandate that each state's Medicaid plan contain certain provisions regulating providers' activities in various respects. *See, e.g.,* 42 U.S.C. § 1396a(a)(38) (plan must require health care providers to furnish certain information upon request of Secretary of Health and Human Services).

More importantly, however, the federal statutes impose many obligations upon the states, and when a CHHA steps into the state's shoes, those obligations are necessarily imposed upon it as well. For instance, the state's duty to provide health care recipients with due process applies equally to health care providers. *Catanzano,* 60 F.3d at 118 (with respect to CHHA's determinations concerning fiscal assessments, "CHHA action is state action that triggers plaintiffs' due process rights"); *Daniels v. Wadley,* 926 F.Supp. 1305, 1311 (M.D.Tenn.1996) (finding that health care providers participating in state's Medicaid program were state actors, and enjoining them from denying benefits to any enrollee prior to a hearing).

One of the *obligations imposed upon the* states is that they must take appropriate corrective action if a health care recipient's hearing decision is favorable to the recipient. 42 C.F.R. § 431.246. In other words, a state cannot simply disregard that decision and substitute its own judgment for that of the administrative law judge.

CHHAs' decisions with respect to treatment of a recipient following an administrative decision in favor of the recipient are made in their capacity as state actors. *Catanzano,* 103 F.3d at 228 ("CHHAs are also state actors in being bound by the results of administrative hearings overturning their determinations"). Defendants' position, then, is tantamount to saying that a state (acting through a CHHA) is *not* bound by administrative decisions, which is plainly contrary to the Medicaid statutes and regulations.

I am also unpersuaded by defendants' reliance on the HCFA's amendment of 42 C.F.R. § 431.51(b)(1)(ii) adding the language about obtaining services from any provider that is "[w]illing to furnish them to that particular recipient," and its "explanation" that it had added this language "to counteract a misunderstanding" that a Medicaid provider must furnish services to every recipient. For one thing, the regulation does not set forth any particular circumstances governing when a provider may or may not refuse to accept a patient. For example, it does not state what the effect would be of a fair hearing decision in a recipient's favor.

The HCFA also did not explain why it believed that there had been a "misunderstanding" about the statute. It simply quoted the reference in 42 U.S.C. § 1396a(a)(23) to a provider "who undertakes to provide him such services." Although ordinarily an agency's interpretation of a statute that it is charged with enforcing is entitled to some deference, a reviewing court should not defer to an agency's interpretation which is contrary to Congress's intent or which would frustrate congressional policy. *Estate of Cowart v. Nicklos Drilling Co.,* 505 U.S. 469, 476, 112 S.Ct. 2589, 120 L.Ed.2d 379 (1992); *Anaheim Memorial Hosp. v. Shalala,* 130 F.3d 845, 849 (9th Cir.1997); *Student Loan Marketing Ass'n v. Riley,* 907 F.Supp. 464, 474–75 (D.D.C.1995), *aff'd,* 104 F.3d 397 (D.C.Cir.), *cert. denied,* — U.S. —, 118 S.Ct. 295, 139 L.Ed.2d 227 (1997). As stated, a major emphasis of the Medicaid statutes and § 1396a(a)(23) in particular is the importance of allowing Medicaid recipients to have a free choice of providers, not to let providers pick and choose whom they will accept. To the extent that 42 C.F.R. § 431.51(b)(1)(ii) can be read as allowing providers to refuse to accept patients even in the face of an administrative decision to the contrary, I find that it is based on an unwarranted and erroneous interpretation of the statute.

I also note that this decision does not leave CHHAs wholly without recourse if they believe that for some reason they cannot or should not accept a patient. The Implementation Plan now in effect provides for a number of steps to be taken when a CHHA believes that home health services should not be provided to a recipient: consultation with the recipient's physician; referral to a social services district for decision by the local professional director; attempts by the social services district to locate a CHHA that is willing to accept the recipient; and fair hearings. This process is designed to protect the recipient's rights to due process, while affording the CHHA a reasonable opportunity to present its views as to why treatment is inappropriate. The fact that the ultimate decision is left in the hands of others does not impinge upon the CHHA's rights.

I find wholly unpersuasive the contention of *amici curiae* in support of defendants' application to modify the Implementation Plan that the Second Circuit's 1996 decision somehow decided the issue before me adversely to plaintiffs. All that the court stated was that a portion of my prior injunction would be invalid "*if* federal law precludes a state from forcing its providers to give home health care ..." *Catanzano,* 103 F.3d at 231 (emphasis added). The court made very clear that it had not decided, and was not then deciding, that issue. As explained above, I find that federal law does not preclude a state from forcing providers to give home health care following a fair hearing decision in a recipient's favor, and the injunction therefore remains valid in its entirety.

## CONCLUSION

On the remand from the Court of Appeals, the State defendants' application to reconsider and to modify this court's Implementation Plan because it conflicts with the federal "Freedom of Choice" law, 42 U.S.C. § 1396a(a)(23), is in all respects denied.

IT IS SO ORDERED.