Michelle **CATANZANO**, Francine Catanzano, Sam Catanzano, Sara Trafton, on behalf of herself and all persons similarly situated, Plaintiffs–Appellees,

Janine Wilson, Mary Jane Smith, Charles Smith, Intervenors–Plaintiffs–Appellees,

v.

Brian **WING**, as Acting Commissioner of the New York State Department of Social Services and Barbara DeBuono, as Commissioner of the New York State Department of Health, Defendants–Appellants.

No. 89–CV–1127L.

United States District Court, W.D. New York.

Sept. 1, 1999.

Bryan D. Hetherington, Public Interest Law of Rochester, Rochester, NY, for plaintiffs.

James L. Gelormini, Office of the New York State Atorney General, Rochester, NY, for defendant.

Mark T. Walsh, Gleason, Dunn, Walsh & O'Shea, Albany, NY, for Home Care Association, amicus.

Eileen M. Considine, Hinman, Straub, Pigors & Manning, P.C., Albany, NY, for Visiting Nurse Service of New York Home Care, amicus.

Peter G. Bergmann, Cadwalader, Wickersham & Taft, New York City, for Metropolitan Jewish Geriatric Center, amicus.

Dorothy Siemon, Bruce Vignery, Washington, DC, for American Association of Retired Persons, amicus.

*DECISION AND ORDER*

LARIMER, Chief Judge.

### PROCEDURAL BACKGROUND

This action was commenced ten years ago on behalf of a single infant plaintiff, Michele Catanzano, seeking declaratory and injunctive relief directing the Monroe County Department of Social Services and the Monroe County Department of Health to provide her with the level of health care that had been

ordered by her treating physician and to which she was entitled under the Medicaid Program. The Court subsequently granted plaintiffs' motion to certify the action as a class action, with a class consisting of all recipients of Medicaid in Monroe County who receive home health care, and who receive less home health care than most recently ordered by their treating physician. In response to certain amendments to the State of New York's home health care statutes and at this Court's suggestion, plaintiffs filed an amended complaint on April 7, 1993, (Dkt. # 97), which modified the definition of the class to encompass recipients of and applicants for home health care in New York who have been or will in the future be deprived of their federal constitutional rights through the operation of those New York statutes and related regulations governing Medicaid-funded home health care.

In March 1994, I issued a Decision and Order granting plaintiffs' motion for a preliminary injunction. *Catanzano v. Dowling*, 847 F.Supp. 1070 (W.D.N.Y.1994). The injunction ordered defendants to do, or refrain from doing, certain actions, in order to ensure that class members would receive notice, a right to a fair hearing, and aid-continuing before their home health care services were suspended, terminated, or reduced. The Court of Appeals subsequently affirmed that decision. *Catanzano v. Dowling*, 60 F.3d 113 (2d Cir.1995).[1]

In June 1994, the Court issued another decision, which, *inter alia*, directed both sides to work together to create an implementation plan to effectuate the Court's preliminary injunction. The parties were unable to agree on a mutually satisfactory plan. Rather than simply issue my own plan, however, after reviewing both sides' proposed plans, I issued a Decision and Order in June 1995 which was meant to clarify the areas of dispute between the parties so that they could devise a plan jointly.

Plaintiffs and defendants were then able to agree on many areas, though not completely.

Defendants therefore submitted their proposed plan, and plaintiffs submitted a copy of the same plan, but with some parts of it changed to reflect plaintiffs' views about how the plan should be worded.

There was no limitation imposed by the Court on what could be included in the Plan. The goal was to have the parties agree on the required procedures to put an end to disputes surrounding implementation of the injunction.

On September 20, 1995, I issued another Decision and Order that resolved the relatively few issues still in dispute, and directed defendants to adopt a plan ("the Plan") attached as an exhibit to that Decision and Order. I also ordered defendants to ensure that the provision, as well as the termination, of health care to class members be undertaken consistent with the terms of the Plan. On December 5, 1995, I denied defendants' motion to reconsider the September 20 order, and upon defendants' appeal from the December 5 order, the Second Circuit affirmed. *Catanzano v. Wing*, 103 F.3d 223 (2d Cir. 1996).

At this point, the Court had entered eight separate decisions and the Court of Appeals issued two decisions affirming the Court's orders that were appealed.

On March 12, 1998, through clerical error, what purported to be a judgment for the plaintiffs was entered by the Clerk of the Court. On March 26, 1998, plaintiffs filed a motion to vacate the judgment. In her declaration in support of the motion, plaintiffs' counsel described the action as "far from over." Declaration of Ellen M. Yacknin (Attachment to Motion to Vacate, Docket Item 269) ¶ 7. She stated that several claims remained unresolved.

Although the judgment for the plaintiffs was indeed issued in error, it nevertheless came as a surprise to the Court that plaintiffs considered this action "far from over," given that this action, which was commenced

---

1. The appeal was actually not taken directly from the injunction decision itself, but from a July 1994 Decision and Order that, *inter alia*, held that actions taken by Certified Home Health Agencies to deny, suspend, or reduce care ordered by private physicians were state actions that triggered plaintiffs' federally mandated hearing rights. The underlying basis for the injunction was nevertheless before the Second Circuit on the appeal.

in 1989, has seen a multitude of issues litigated—and resolved—both in this Court and in the Court of Appeals for the Second Circuit over the years. On March 27, 1998, therefore, I issued an Order to Show Cause why my preliminary injunction should not be converted to a permanent injunction and why a final judgment should not be entered in this case.

The Court subsequently met with counsel for both sides to discuss the status of the case. There was a consensus that it would be best for all concerned if this case were finally to come to a conclusion. It was therefore agreed that plaintiffs would file a motion seeking various types of relief on all claims.

Plaintiffs filed their motion on July 10, 1998. Plaintiffs request an order that: (1) enters final judgment on some of their claims; (2) grants summary judgment as to one of their claims; and (3) dismisses, without prejudice, their remaining claims. That motion is now pending before the Court.

## DISCUSSION

### I. Motion for Entry of Final Judgment

Plaintiffs contend that during the course of this litigation, the Court decided five issues that are now appropriate for entry of final judgment:

1. Certified Home Health Agencies ("CHHAs") are state actors for purposes of Medicaid-funded home health care services ("HHCS");

2. Medicaid-funded HHCS as ordered by a treating physician cannot be denied, discontinued or reduced, without adequate notice, fair hearing rights, and aid-continuing;

3. CHHAs may act upon a physician's oral order to reduce or discontinue care only if the order is followed by a written order within seven days;

4. Temporary hospitalization of a recipient of HHCS must be treated as a suspension of the prior care, and upon discharge the applicant must not be treated as a new applicant, but be provided the same rights as a current recipient of HHCS; and

5. CHHAs must comply with the Plan, including CHHAs' providing HHCS when ordered to do so by the Professional Director or as a result of an Administration Fair Hearing.

Plaintiffs contend that these matters were all decided in plaintiffs' favor by this Court's and the Court of Appeals' several decisions.

In response, defendants for the most part do not object to the entry of final judgment on these issues. Defendants' chief objection with respect to these matters is that plaintiffs seek a final judgment only on issues upon which the Court has ruled favorably to plaintiffs, and have omitted to ask for entry of a final judgment on two other issues upon which the Court has ruled in favor of defendants. These favorable defense rulings are: (1) that only "detrimental" changes in the level of services are subject to notice and fair-hearing rights; and (2) that changes in the level of services do not give rise to notice and fair-hearing rights when ordered by the treating physician. The only objection that defendants have raised specifically concerning the five issues presented by plaintiffs is that the entry of final judgment is not appropriate with respect to the issue that services may not be "denied, discontinued, or reduced *for any reason*" without providing notice, fair hearing rights, and aid-continuing, as maintained by plaintiffs. Declaration of Bryan D. Hetherington (Attached to Plaintiffs' Motion for Entry of Final Judgment, etc., Docket Item 277) ¶ 7(1) (emphasis added); Affirmation of James L. Gelormini (Docket Item 280) ¶ 19. Defendants contend that this statement is too broad and not supported by my prior rulings.

With respect to all of these matters, I believe that this Court's prior decisions, primarily those granting the preliminary injunction and implementing the Plan, define the parties' relative rights and obligations with sufficient specificity and clarity. Further reiteration of these matters would serve no useful purpose. The Court's decisions and the Plan speak for themselves. The issue of what types of actions trigger recipients' federal rights has been extensively litigated in this case, and the Plan was intended to make clear when and under what circumstances those rights come into play. The Plan em-

bodies and effectuates my prior decisions in this area, and no further elaboration or attempts to refine its language is necessary.

By this decision, a permanent injunction and final judgment is hereby entered in favor of plaintiffs consistent with the terms of the preliminary injunction and the Court's subsequent decisions clarifying and amplifying it. Defendants must continue to comply with the injunction, the Plan and the other prior rulings of this Court and of the Court of Appeals. Any future disputes that may arise concerning any issues that are within the scope of the Plan or my prior decisions will have to be resolved with reference to the Plan and those decisions. To the extent that disputes arise concerning new matters or matters *outside* the scope of the my previous decisions or of the Plan, they are not appropriately presented for resolution here, and if they must be litigated, they will have to be litigated in a new, different lawsuit.

## II. Dismissal of Plaintiffs' First, Third, Fourth and Fifth Claims

■ Plaintiffs contend that four claims remain undecided, and seek dismissal of those claims without prejudice pursuant to Fed. R.Civ.P. 41(a)(2). The four claims, as numbered in the amended complaint, allege that:

Claim 1. The State's Medicaid system violates the Medicaid Act by permitting the provision of less than the amount of home health care determined to be medically necessary by the treating physician;

Claim 3. The State's system violates the Medicaid Act's requirement that a "single state agency" administer the state's medical assistance plan;

Claim 4. The State's system violates the Medicaid Act's utilization control regulations; and

Claim 5. The State has deprived plaintiffs of their liberty in violation of the Due Process Clause by forcing them to be institutionalized against their will and against professional judgment.

Plaintiffs contend that defendants would not be prejudiced by a Rule 41(a)(2) dismissal of these claims, because they have not been litigated yet in this action. Defendants oppose this motion on the ground that they have incurred substantial costs in preparing to defend against these claims, including the preparation of a motion for summary judgment which was, however, was never filed. Defendants request that if dismissal of these claims without prejudice is allowed, the dismissal be on condition that no fees or costs associated with those claims be awarded by the Court.

■ "A voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed 'if the defendant will not be prejudiced thereby.'" *D'Alto v. Dahon California, Inc.*, 100 F.3d 281, 283 (2d Cir.1996) (quoting *Wakefield v. Northern Telecom Inc.*, 769 F.2d 109, 114 (2d Cir.1985)). In addition, "[t]he United States Supreme Court recognized long ago that starting a litigation all over again does not constitute legal prejudice." *D'Alto*, 100 F.3d at 283 (citing *Jones v. S.E.C.*, 298 U.S. 1, 19, 56 S.Ct. 654, 80 L.Ed. 1015 (1936)).

I grant plaintiffs' motion to dismiss these claims without prejudice. I do not see how defendants' work spent on these claims can prejudice them in any way. If plaintiffs at some point assert some or all of these claims in a new lawsuit, defendants' prior work on these claims would not have been wasted, nor would it somehow be more difficult for defendants to litigate these issues in a separate lawsuit. As for attorney's fees and costs, plaintiffs have not indicated an intent to seek fees or costs with respect to these claims. Fee shifting statutes allow for fees only on claims that have been successfully prosecuted, not those that have been dismissed. In any event, whether plaintiffs will be entitled to *any* award of fees or costs is simply not before me at this time, and I see no need to decide those matters now. Accordingly, plaintiffs' motion is granted and the first, third, fourth, and fifth claims for relief in the amended complaint (Dkt. # 97) are dismissed without prejudice pursuant to Rule 41(a)(2).

## III. Summary Judgment on Health–and–Safety Issue

■ Plaintiffs move for "summary judgment" on their claim that CHHAs must provide notice and hearing rights when services

are denied or discontinued because of alleged concerns about the health and safety of CHHA employees. In my June 22, 1995 Decision and Order, I held that decisions relating to agency personnel's safety fell outside the scope of the preliminary injunction. Plaintiffs claim that defendants are using that ruling as a loophole to deny care to applicants. Defendants respond that I have already ruled in defendants' favor on this issue in my June 22, 1995 decision.

I agree with plaintiffs that the June 1995 decision did not decide whether a reduction of services stemming from concern about employees' safety gives rise to notice and hearing rights. All that I held there was that such actions are not covered by the injunction.

Nevertheless, I do not believe that plaintiffs should be allowed to litigate this issue in this action, much less that they are entitled to summary judgment. This so-called claim was never pleaded in the complaint as a separate cause of action. Plaintiffs had ample opportunity prior to the issuance of the injunction to raise this claim, which they failed to do. It was only in attempting to fashion a plan to implement the injunction that this matter arose, in connection with defining the precise parameters of the injunction. My ruling that such actions fell outside the scope of the injunction was consistent with my view, both then and now, that these matters are outside the scope of the lawsuit as well. Although the subject matter of this action has certainly changed over the course of this litigation, this case clearly has *not* been about decisions relating to CHHA employees' health and safety. In short, this issue is not within the scope of this suit, and is not properly before me.

## IV. "Inadequate Notice" and "Physician Order" Notice–Related Claims

██ Plaintiffs contend that there are two issues that the Court has decided adversely to them, but "only in the context of plaintiffs' Preliminary Injunction Motion," and "only in the abstract...." Hetherington Decl. ¶¶ 88, 89. The first of these is whether the notices used by defendants are constitutionally adequate. The second is whether notice is re-quired when an order denying or reducing services is allegedly *consistent* with the treating physician's order. Plaintiffs propose that the Court either: dismiss these claims without prejudice; or enter a final judgment that provides that these claims have been adjudicated solely for purposes of preliminary, but not final, injunctive relief, whatever that means. Plaintiffs contend that they should be allowed to present these issues in the context of actual persons who claim that they could not understand the notices that they received, or to show that a physician's order discontinuing or reducing care was based on misinformation that the physician received from the CHHA.

I see no basis upon which to grant the relief plaintiffs seek with respect to the adequacy of the notice. In my June 22, 1995 Decision and Order, I held unequivocally that "the notices prepared by the State concerning its fiscal assessment review are adequate." *Catanzano v. Dowling,* slip op. at 12 (W.D.N.Y. June 22, 1995). I found the notices to be constitutionally sufficient as a matter of law, and I see no basis upon which to revisit that issue or allow plaintiffs to relitigate it. The fact that a particular medicaid recipient had difficulty with the notice, if that is the case, does not change the Court's opinion that the notice was objectively adequate if it complied with the Court's requests as set forth in the June 22, 1995 Decision and Order.

As for changes made in the level of care that are consistent with the treating physician's orders, I ruled in my July 28, 1994 Decision and Order that "a change directed by the patient's treating physician is not the kind of change or alteration that requires notice and a fair hearing." *Catanzano v. Dowling,* slip op. at 14 (W.D.N.Y. July 28, 1994). Plaintiffs contend that conversion of this holding to a final judgment is not appropriate, in part because I cited the district court decision in *Granato,* which was later reversed by the Second Circuit.

This argument fails for several reasons. First, my July 1994 decision cited *Granato* only for the proposition that notice, hearing, and aid-continuing rights arise only when the Medicaid *agency* takes action to sus-

pend, terminate, or reduce services. The Second Circuit's decision in *Granato* is not contrary to that view. In *Granato,* the Court of Appeals held that a change in services need not be "detrimental" to constitute an agency action under 42 C.F.R. § 431.201. The decision at issue there was the agency's termination of services during the recipients' hospitalization. The district court held that the termination of services did not constitute an agency action because there was no detrimental change in services upon hospitalization, not the physician's decision. Stating that it "d[id] not believe that such a standard makes sense in the context of home care services," the Second Circuit noted that "[w]hile the agencies thought that a change in services would work to the benefit of the appellants, in all three case [sic] both they *and their physicians* clearly disagreed with the agencies' decisions." *Granato,* 74 F.3d at 412 (emphasis added).

The Second Circuit, then, did not hold that actions by persons or entities other than an agency are covered by § 431.201, but only that agency actions need not be "detrimental" to fall within the purview of that regulation. If anything, *Granato's* reference to the fact that the treating physicians disagreed with the CHHAs suggests that it is only when the CHHA and the treating physician *dis*agree that notice and a fair hearing are required. The Court of Appeals' decision therefore in no way undermined the basis for my holding that changes directed by the treating physician do not require notice or a fair hearing.

Furthermore, even assuming that agency actions taken at the direction of a treating physician could be covered by § 431.201, recipients whose level of care is altered by their treating physician do not fall within the class here. The class was originally defined as all recipients of Medicaid in Monroe County who receive home health care, and who now or in the future receive *less* home health care than that level of care ordered by their treating physician. That, in fact, was the entire *raison d'etre* for this lawsuit: to ensure that recipients of Medicaid-funded home health care would receive the amount of care prescribed by their treating physicians.

After New York State amended the statutes governing Medicaid-funded home health care services, the complaint was amended to include as class members recipients of and applicants for home health care in New York who have been or will in the future be deprived of their federal constitutional rights *through the operation of those amendments.* But, physician-ordered changes were not at issue and were not the basis for expansion of the class. Never has the class been so broadly defined as to include recipients whose services have been reduced by their own physician.

I also note that after the Second Circuit's decision in *Granato,* plaintiffs moved for an order amending the Plan to conform to the Court of Appeals' decision. I granted that motion on March 20, 1996, and amended the Plan using language agreed upon by both sides here. Plaintiffs, therefore, appear to have been fully satisfied at that point that the Plan was consistent with *Granato,* and I see no reason to allow further litigation regarding my prior rulings at this late stage because of the *Granato* decision.

Plaintiffs also contend that notice and hearing rights should apply to physician-ordered changes because of the risk of error on the part of the CHHA, or of a physician making a decision based on misinformation passed on by the CHHA. Although plaintiffs have presented two affidavits from persons alleging that such events have occurred in particular circumstances, I am not convinced that the risk of such occurrences is high enough to warrant mandating the full panoply of notice and hearing rights to health care recipients whose own physicians direct some change in their care. As with a number of other issues that now have been raised in this case, it seems that plaintiffs have attempted to imagine every conceivable circumstance in which a recipient's level of care is affected in any way, and to have the Court issue advisory opinions about the legal implications of those changes. It is not the Court's task to oversee the day-to-day operation of New York's Medicaid program, however, and to the extent that these matters were not timely raised earlier in this litigation, I decline to expand the scope of the

injunction or the Plan to include them as well.

One final matter needs to be addressed. In a letter dated August 9, 1999, defense counsel informed the Court that the fiscal assessment statute, N.Y.Soc.Serv.L. § 367–j, expired by its terms on June 30, 1999, after the state legislature declined to extend the statute and omitted it from the current budget. Effective July 1, 1999, therefore, all Social Services Districts and CHHAs were directed to discontinue all fiscal assessment activities. In a response dated August 18, 1999, plaintiffs' attorney sets forth their view that the expiration of § 367–j has no effect on plaintiffs' pending motion and does not moot any of the issues raised in this action.

The fiscal assessment procedures have been extensively discussed in prior decisions of this Court, and familiarity with them and their relevance to this lawsuit is assumed. Although this case was commenced before § 367–j was enacted, it is fair to say that the fiscal assessments have been at the heart of much of this litigation. Indeed, as I noted in my June 14, 1994 Decision and Order, the implementation of the fiscal assessment statute was the "galvanizing event which caused plaintiffs to seek relief in this Court" in the form of an injunction. *Catanzano v. Dowling,* slip op. at 4 (W.D.N.Y. June 14, 1994). In fact, the class was enlarged to include those affected by enactment of the statute. Despite plaintiffs' speculation that the fiscal assessment statute may be resurrected at some point, the statute's demise is an additional reason to dispose of all of plaintiffs' claims, whether by entry of a final judgment or by dismissal. Since one of the central sources of controversy between the parties has, for the time being at least, ceased to exist, final resolution of this action is appropriate. Of course, the Court's injunction covers a range of matters, and does not just concern fiscal assessments. At any rate, the injunction and the Plan will remain in full force and effect, and should the fiscal assessment procedures be reimplemented in the same format, defendants will continue to be bound by this Court's prior rulings concerning those procedures.

## CONCLUSION

Plaintiffs' Motion for Entry of Final Judgment as to Some Claims, Voluntary Dismissal of Some Claims, and Summary Judgment as to One Claim (Docket Item 277) is granted in part and denied in part. This Court's Preliminary Injunction issued on March 31, 1994 is hereby converted into a Permanent Injunction, and the parties must comply with its terms, with the Implementation Plan set forth in this Court's September 20, 1995 Decision and Order, as modified by my Order entered on March 20, 1996, and with all other prior rulings in this action issued by this Court and by the Court of Appeals for the Second Circuit.

Final Judgment is hereby entered in favor of plaintiffs on the second cause of action in the amended complaint (Dkt. # 97).

Plaintiffs' First, Third, Fourth and Fifth causes of action are dismissed without prejudice pursuant to Fed.R.Civ.P. 41(a)(2). To the extent that any other claims asserted by plaintiffs have not been expressly addressed in this Decision and Order, they are dismissed without prejudice as well.

IT IS SO ORDERED.