277 F.3d 99 (2nd Cir. 2001)
 MICHELE CATANZANO, FRANCINE CATANZANO, SAM CATANZANO, SARAH TRAFTON, ON BEHALF OF HERSELF AND ALL PERSONS SIMILARLY SITUATED, PLAINTIFFS-APPELLANTS,
JANNIE WILSON, MARY JANE SMITH AND CHARLES SMITH, INTERVENOR-PLAINTIFFS-APPELLANTS,
v.
BRIAN J. WING, AS ACTING COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF SOCIAL SERVICES AND BARBARA A. DEBUONO, AS COMMISSIONER OF THE NEW YORK STATE DEPARTMENT OF HEALTH, THIRD-PARTY-DEFENDANTS-APPELLEES.
 Docket No. 99-9197
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued November 22, 2000
Decided December 7, 2001
 
 Appeal from the judgment of the United States District Court for the Western District of New York (David G. Larimer, Judge) entered September 2, 1999, pursuant to a decision and order denying Plaintiffs-Appellants' motion for entry of final judgment as to some claims, voluntary dismissal of some claims, and summary judgment with respect to various claims.
 VACATED AND REMANDED.[Copyrighted Material Omitted]
 Ellen M. Yacknin, Greater Upstate Law Project, Rochester, NY (Bryan D. Hetherington, Public Interest Law Office of Rochester, on the brief), for Plaintiffs-Appellants and Intervenor-Plaintiffs-Appellants.
 Patrick Barnett-Mulligan, Assistant Solicitor General, Attorney General's Office, State of New York, Albany, NY (Eliot Spitzer, Attorney General of the State of New York, Nancy A. Spiegel, Assistant Solicitor General, Peter H. Schiff, Senior Counsel, on the brief), for Third-Party-Defendants-Appellees.
 Before: Calabresi, F.I. Parker, Circuit Judges, and Trager*, District Judge.
 Parker, Circuit Judge
 In 1989, Michele Catanzano brought suit in the United States District Court for the Western District of New York (David G. Larimer, Judge) to compel the Monroe County, New York Department of Social Services and Department of Health to provide her with notice, a hearing, and the continuation of her home health services ("aid-continuing") after a Certified Home Health Agency ("CHHA") authorized by the State of New York to provide Medicaid-funded home health services to Ms. Catanzano reduced her home health services without affording such procedures. Twelve years later, after the intervention of several parties, certification of a class of similarly situated Medicaid recipients, an injunction and Implementation Plan, and two appeals to this Court, the litigation continues.
 The case is now before this Court on the appeal by Plaintiffs-Appellants Michele Catanzano, Francine Catanzano, Sam Catanzano, Sarah Trafton, and the class they represent, as well as Intervenor-Plaintiffs-Appellants Jannie Wilson, Mary Jane Smith and Charles Smith (collectively, "Plaintiffs") from the judgment entered September 2, 1999, upon a September 1, 1999, decision and order of the district court denying Plaintiffs' "Motion for Entry of Final Judgment as to Some Claims, Voluntary Dismissal of Some Claims, and Summary Judgment as to One Claim," and entering a permanent injunction against Third-Party- Defendants-Appellees Brian J. Wing, as Acting Commissioner of the New York State Department of Social Services, and Barbara A. DeBuono, as Commissioner of Health of the New York State Department of Health (collectively, "Defendants"). Plaintiffs challenge the district court's sua sponte entry of final judgment with respect to two of their claims, which concern (a) the constitutional and legal adequacy of court-ordered notices of fiscal assessment decisions ("Notice Adequacy Claim"), and (b) the process due when a treatment action is taken by a CHHA that conforms with the orders of the recipient's treating physician ("Physician's Order Claim"). They ask this Court either: (1) to vacate the district court's entry of final judgment and order that the injunction be made preliminary with respect to these claims; (2) to dismiss the appeal as moot and vacate the adverse parts of the judgment of the district court; or (3) to reverse the district court with respect to these claims. With respect to Plaintiffs' Notice Adequacy Claim, we conclude that the expiration of New York's "fiscal assessment" amendments to its Social Services Law rendered this claim moot. We therefore vacate the district court's entry of final judgment with respect to that claim, and order that the claim be dismissed without prejudice. With respect to Plaintiffs' Physician's Order Claim, we conclude that the district court abused its discretion in denying Plaintiffs' motion to dismiss without prejudice. We therefore vacate the district court's entry of final judgment with respect to that claim and remand to the district court with the instruction that the claim be dismissed without prejudice.
 I. BACKGROUND
 The long and complex history of this litigation has been set forth in detail in numerous prior opinions of this Court and of the district court. See, e.g., Catanzano v. Wing, 103 F.3d 223, 225-28 (2d Cir. 1996) ("Catanzano V")[1]; Catanzano v. Dowling, 847 F. Supp. 1070, 1074-75 (W.D.N.Y. 1994) ("Catanzano II"), aff'd, 60 F.3d 113 (2d Cir. 1995) ("Catanzano III"). Familiarity with the facts and with the prior decisions of the district court and of this Court is therefore assumed, and the following discussion is restricted to facts relevant to the issues currently on appeal.
 New York's health care system provides, as part of its participation in the Medicaid program, that home health services be furnished to financially needy patients by a CHHA. See N.Y. Pub. Health Law ("N.Y.P.H.L.") § 3616 (McKinney 2000); see also 42 U.S.C. § 1396d(a)(7) (1992). CHHAs provide home health services, i.e., services provided in the home of a "preventive, therapeutic, rehabilitative, health guidance and/or supportive nature," including, inter alia, nursing services. N.Y.P.H.L. § 3602(3)(McKinney 1985); accord N.Y. Comp. Codes R. & Regs. ("N.Y.C.R.R.") tit. 18, §§ 505.23(a)(3), 505.23(b)(1)(2000); 42 C.F.R. § 440.70, pt. 484 (2000).
 In 1989, Michele Catanzano brought a class action pursuant to 42 U.S.C. § 1983 in the district court against the directors of the Monroe County, New York Department of Social Services and the Monroe County, New York Department of Health (collectively, "County Defendants") after her CHHA reduced her home health services in contravention of her doctor's orders, without providing her with notice or with the opportunity to contest the reduction in a hearing, and without continuing her aid until a hearing could be provided. In her complaint, Catanzano alleged, inter alia, that such actions, without accompanying procedural protections, violated the due process clause of the Fourteenth Amendment to the United States Constitution, the federal Medicaid Act, 42 U.S.C. § 1396 et seq., the Medicaid regulations, 42 C.F.R. §§ 431.200-431.250, and the New York Social Services Law ("N.Y.S.S.L.") and corresponding regulations. The district court preliminarily enjoined the reduction, Catanzano v. Richardson, No. 89- CV-1127L (W.D.N.Y. Oct. 17, 1989), aff'd, 902 F.2d 1556 (2d Cir. 1990) ("Catanzano I"), and certified a plaintiff class comprised of Monroe County Medicaid recipients "who receive home health care, and who now or in the future receive less home health care than that level of care ordered by their treating physician," Catanzano II, 847 F. Supp. at 1074.
 In 1991 and 1992, the State of New York amended its Social Services Law, instituting a procedure whereby CHHAs performed a four-step fiscal assessment to determine whether home health services should be provided. N.Y.S.S.L. § 367-j (McKinney 1992) (expired 1999), Id. § 367-o (McKinney 1992)(expired 1997), 365-a(2)(d)(McKinney 1992); N.Y.C.R.R. tit. 18, § 505.23 (2000). These amendments, or "fiscal assessment laws," did not provide for notice, a hearing, or aid-continuing when a CHHA or local social services district conducted a fiscal assessment and determined that a change in service was warranted. Plaintiffs moved to amend their complaint so as to challenge the fiscal assessment laws and add the Commissioners of New York's Department of Health and Department of Social Services (collectively, "Defendants" or "State Defendants")[2], to modify the class, and for a preliminary injunction against the implementation of the amendments without rights to notice, a hearing, and aid-continuing. The motions were granted, and on March 31, 1994, the district court modified the class to comprise
 [a]ll New York State recipients and applicants of Medicaid-funded home health care who receive less home health care than most recently ordered by their treating physician or who have had their home health care suspended, denied, terminated or reduced without prior notice, right to a fair hearing and aid-continuing as mandated by 42 C.F.R. 431.200-431.250.
 Catanzano II, 847 F. Supp. at 1079. The district court concluded that under the fiscal assessment laws "a CHHA could unilaterally reduce home health care services without affording the patient any notification or any hearing," and that such a circumstance "contravenes the clear directive of federal law and basic due process rights delineated in Goldberg v. Kelly, [397 U.S. 254 (1970),] that prior to any adverse action, the patient must receive a notice indicating the action to be taken, the reasons for the action and the regulations that support such action." Catanzano II, 847 F. Supp. at 1084. The district court therefore preliminarily enjoined the State and County defendants from, inter alia, "suspending, terminating or reducing" home health services received by class members "as a result of conducting a fiscal assessment or otherwise" without providing notice, hearing, and aid-continuing procedures as mandated by Medicaid regulations, and from implementing the fiscal assessment laws until such procedures have been established. Id. at 1086.
 When the parties could not agree on implementation of the district court's order, the court modified the injunction and directed Defendants to adopt a Preliminary Injunction Implementation Plan. See Catanzano ex rel. Catanzano v. Dowling, 900 F. Supp. 650, 653 (W.D.N.Y. 1995) ("Catanzano IV"), aff'd in part and vacated in part, Catanzano V. The Plan sets forth detailed instructions for CHHAs and local social services districts with respect to denials of, reductions in, or terminations of home health services based on: CHHA determinations that the services ordered by the recipient's physician cannot maintain the recipient's health and safety; CHHA-performed fiscal assessments; and CHHA determinations that the recipient's medical conditions have improved. Catanzano IV, 900 F. Supp. at 653-63. The district court specifically limited the injunction and Plan to "adverse actions taken contrary to a treating physician's orders with respect to home health services." Id. at 653. The court also attached model notices to the Plan which it ordered the local social services district to provide whenever such actions were taken. The modified injunction and Implementation Plan remain in effect now. See Catanzano v. Wing, 992 F. Supp. 593 (W.D.N.Y. 1998) ("Catanzano VI") (adopting Implementation Plan on remand from Catanzano V); N.Y.C.R.R. tit. 18, § 505.23(f) (2000) (codifying Implementation Plan).
 On March 27, 1998, the district court ordered the parties to show cause as to why it should not convert its preliminary injunction into a permanent injunction and issue a final judgment. See Catanzano v. Wing, 189 F.R.D. 66, 69 (W.D.N.Y. 1999) ("Catanzano VII"). In response to the order, Plaintiffs filed a motion on July 10, 1998, requesting various forms of relief on their remaining claims. Only two of those claims are at issue in this appeal: first, Plaintiffs claim that the fiscal assessment notices mandated by the Implementation Plan are legally and constitutionally inadequate because they are unreadable and do not provide sufficient information ("Notice Adequacy Claim"); second, they claim that state law, federal law, and due process requires that home health services recipients be given notice, a hearing, and aid- continuing when the CHHA denies, reduces, or terminates services, not only contrary to the treating physician's order, but even if the CHHA's decision ostensibly conforms to the treating physician's order ("Physician's Order Claim").
 With respect to these two claims, Plaintiffs requested that the district court either: (1) dismiss the claims without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2), J.A. at 611; (2) expressly provide that the claims had been "adjudicated on their merits solely for the purposes of preliminary, but not final, injunctive relief", id.; or (3) allow Plaintiffs to conduct discovery and submit a motion for summary judgment, J.A. at 592 n.1.
 
 
 1
 On July 1, 1999, while Plaintiffs' motion was still under advisement, the fiscal assessment laws expired. See N.Y.S.S.L. § 367-j note (2001). The next day, the New York State Department of Health notified all of its local social services districts that the fiscal assessment laws had expired and directed the districts to "discontinue all fiscal assessment activities until further notice." Plaintiffs, however, believing that the New York legislature would soon reinstate the laws, urged the court to rule on the motion despite their expiration.
 
 
 2
 The court granted Plaintiffs' motion in part and denied it in part. Catanzano v. Wing, 189 F.R.D. 66, 73 (W.D.N.Y. 1999) ("Catanzano VII").
 
 
 3
 With respect to Plaintiffs' Notice Adequacy Claim, the court stated that it had already "found the notices to be constitutionally sufficient as a matter of law," and found "no basis upon which to revisit that issue or allow plaintiffs to relitigate it." Id. at 71. The court therefore denied the relief Plaintiffs sought and entered final judgment on that claim. Id. at 70, 73.
 
 
 4
 With respect to Plaintiffs' Physician's Order Claim, the court denied Plaintiffs' requested relief and reaffirmed its earlier determination that "a change directed by the patient's treating physician is not the kind of change or alteration that requires notice and a fair hearing." Id. at 71 (quoting Catanzano v. Dowling, No. 89-CV-1127L, at 14 (W.D.N.Y. July 28, 1994) (internal quotation marks omitted)). Furthermore, the court ruled, the class had never "been so broadly defined as to include recipients whose services have been reduced by their own physician," and the court found that the risk of physician or CHHA error was not "high enough to warrant mandating the full panoply of notice and hearing rights to health care recipients whose own physicians direct some change in their care." Id. at 72.
 
 
 5
 In addition, the court concluded that rather than rendering the case moot, the expiration of the fiscal assessment laws merely provided further justification for its decision to enter final judgment and to close the case:
 
 
 6
 [T]he statute's demise is an additional reason to dispose of all of plaintiffs' claims, whether by entry of a final judgment or by dismissal. Since one of the central sources of controversy between the parties has, for the time being at least, ceased to exist, final resolution of this action is appropriate.... [S]hould the fiscal assessment procedures be reimplemented in the same format, defendants will continue to be bound by this Court's prior rulings concerning those procedures.
 
 
 7
 Id. at 73.
 
 
 8
 Whereupon the court converted its preliminary injunction into a permanent injunction and ordered the parties to comply with the injunction, the Implementation Plan, and "all other prior rulings" issued in this action by both the district court and this Court. Id. The district court also entered final judgment in Plaintiffs' favor on the second cause of action in their amended complaint, in which Plaintiffs alleged that Defendants' failure to provide notice, a hearing, and aid-continuing when actions were taken affecting Plaintiffs' home health services violated due process and the Medicaid Act. Id.[3]
 
 
 9
 In December 1999, shortly after Plaintiffs had commenced their appeal to this Court, the New York legislature met and declined to renew the fiscal assessment laws. Yacknin Decl. in Supp. of Mot. to Dismiss the Appeal as Moot and To Vacate the Adverse Rulings of the Decision Below ("Yacknin Decl.") ¶¶ 65-66. Plaintiffs then moved to dismiss the appeal as moot and to vacate the adverse rulings of the decision below. Plaintiffs contended that in light of the legislature's December 1999 decision not to reinstate the fiscal assessment laws, their Notice Adequacy and Treating Physician's Order Claims are moot because the statutes left in place after the laws' expiration provide them with sufficient due process protections. See Yacknin Decl. ¶ 71, 77; Appellants' Br. at 46. A Panel of this Court denied the motion without prejudice to its renewal before this Panel. Catanzano v. Wing, No. 99- 9197(L) (2d Cir. Feb. 29, 2000) (order denying Plaintiffs' Motion for Dismissal of Appeal, and Vacatur of Adverse Rulings).
 
 II. DISCUSSION
 
 10
 On appeal, in addition to challenging the district court's substantive conclusions regarding their Notice Adequacy Claim and their Physician's Order Claim, Plaintiffs reassert their argument that the fiscal assessment laws' expiration renders moot both of the claims they have raised on appeal. They ask this Court either: (1) to reverse the district court's decision with respect to Plaintiffs' Notice Adequacy Claim and Physician's Order Claim, and direct the district court either to dismiss these claims without prejudice or to restrict its judgment by "enter[ing] a judgment that expressly provides that its ruling[s] on these claims were made for [the] sole purpose of preliminary, but not final, injunctive relief," Appellants' Br. at 47; (2) to dismiss the appeal as moot and vacate the judgment of the district court; or (3) to reverse the court's rulings on these two issues.
 
 
 11
 Defendants agree that the expiration of the fiscal assessment laws renders the Notice Adequacy Claim moot, but argue that the Physician's Order Claim is not moot because it is not affected by the expiration of the amendments. Defendants further argue that CHHA actions in implementing physicians' orders do not require the procedural protections Plaintiffs seek because such actions are not those of the state.
 
 A. Notice Adequacy Claim
 
 12
 The district court's Preliminary Injunction Implementation Plan requires that local social services districts issue specific notices whenever a Medicaid recipient's (or a Medicaid applicant's) home health services are denied, discontinued, or reduced contrary to the recipient's physician's orders due, inter alia, to a fiscal assessment.[4] See N.Y.C.R.R. tit. 18, § 505.23(f) app. A-G; Catanzano IV, 900 F. Supp. at 654-61. Plaintiffs argue that these notices are legally and constitutionally inadequate because they do not provide individualized reasons for the action being taken, and because they are printed in a type that is too small to read using language too difficult to understand.
 
 
 13
 We review questions of mootness de novo because they are questions of law. See Fund for Animals v. Babbitt, 89 F.3d 128, 132 (2d Cir. 1996) (citing Comer v. Cisneros, 37 F.3d 775, 787 (2d Cir. 1994)).
 
 
 14
 The mootness doctrine, which is mandated by the "case or controversy" requirement in Article III of the United States Constitution, requires that federal courts may not adjudicate matters that no longer present an actual dispute between parties. See Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990). Thus, "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," Powell v. McCormack, 395 U.S. 486, 496 (1969), a case is moot and the federal court is divested of jurisdiction over it, see County of Los Angeles v. Davis, 440 U.S. 625, 631 (1979). For example, when "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, [and] interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," the issue is moot. Id. (internal citations, quotations, and alterations omitted). "The central question... is constant -- whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties." Charles Alan Wright et al., 13A Federal Practice & Procedure § 3533 (2d ed. 1984).
 
 
 15
 Since both Plaintiffs and Defendants agree that the State is no longer implementing the fiscal assessment laws, and there is no reason to expect that fiscal assessments are now occurring or that the legislature will re-enact the laws, no controversy now exists with respect to this claim and it is therefore moot. See Burke v. Barnes, 479 U.S. 361, 363- 64 (1987) (holding that, when a challenged statute "by its own terms [becomes] a dead letter," the case becomes moot); cf. Assoc. Gen. Contractors of Conn., Inc. v. City of New Haven, 41 F.3d 62, 66-67 (2d Cir. 1994) (finding case moot where challenged city ordinance setting aside percentage of municipal contracts for minority businesses expired and Court could not reasonably expect city to re-enact ordinance on same terms).
 
 
 16
 Although the fiscal assessment laws expired before the district court ruled on Plaintiffs' Notice Adequacy Claim, the district court did not err in declining to dismiss that claim even though at the time of its decision the amendments had already expired. "Expiration will not moot an attack... if there is a reasonably concrete basis to anticipate that the expired rule will be reenacted in a form that will raise the same questions." 13A Federal Practice & Procedure § 3533.6; cf. City of Mesquite v. Alladin's Castle, Inc., 455 U.S. 283, 289 & n.11 (1982) (declining to dismiss case as moot where city repealed challenged portion of ordinance upon order of district court but where city had announced that it would re-enact ordinance upon vacatur of district court's order). In the face of Plaintiffs' counsel's suggestion that the State legislature was likely to re-enact the fiscal assessment laws, a "reasonable expectation... that the alleged violation w[ould] recur" existed, Davis, 440 U.S. at 631 (internal quotation marks omitted), and the court therefore did not err in maintaining the injunction "should the fiscal assessment procedures be reimplemented in the same format," Catanzano VII, 189 F.R.D. at 73. Now, in contrast, both parties contend that the fiscal assessment laws have been permanently laid to rest.
 
 
 17
 It is well-established that, when a matter becomes moot on appeal, federal appellate courts will generally vacate the lower court's judgment except where "'actions attributable to one of the parties' rendered the appeal moot or the district court judgment 'had already been subjected to appellate scrutiny to which the losing party was entitled'" in order to avoid the negative preclusive effects that would result from letting the district court's judgment stand. Assoc. Gen. Contractors of Conn., 41 F.3d at 67 (quoting Bragger v. Trinity Capital Enter. Corp., 30 F.3d 14, 17 (2d Cir. 1994)); accord United States v. Munsingwear, Inc., 340 U.S. 36, 40 (1950)). Neither of these exceptions apply with respect to Plaintiffs' Notice Adequacy Claim, since the adequacy of the notices has not been decided by this Court and neither party caused the fiscal assessment laws to expire.
 
 
 18
 We therefore vacate the district court's final judgment and permanent injunction with respect to Plaintiffs' Notice Adequacy Claim, and order the district court to dismiss Plaintiffs' Notice Adequacy Claim, without prejudice, as moot.
 
 B. Physician's Order Claim
 
 19
 Plaintiffs claim that they are entitled to notice, a hearing, and aid- continuing when a CHHA reduces, denies or discontinues their home health services, even when such actions comport or ostensibly comport with the orders of the treating physician. This claim arises from Plaintiffs' concern that the CHHAs will mislead or manipulate physicians into ordering less-than-optimal levels of care, or that either the CHHA or the physician will make mistakes in ordering or providing services.
 
 
 20
 Plaintiffs argue that in light of their evidentiary submissions in support of allegations of improper care being assigned by the treating physician due to error and CHHA misinformation, and in light of Plaintiffs' outstanding discovery requests, the court should have either dismissed this claim without prejudice, limited its ruling to the preliminary injunction, or allowed Plaintiffs to proceed with discovery. Plaintiffs also argue that the appeal is moot with respect to this claim because this claim was brought against the State Defendants only after the fiscal assessment laws had been enacted. We need not address the merits of this claim, because we hold that it should have been dismissed without prejudice.
 
 1. Whether Physician's Order Claim is Moot
 
 21
 Plaintiffs contend that they added the State Defendants in direct response to "the Legislature's adoption, and the state defendants' implementation, of the 1991 and 1992 home care 'fiscal assessment' laws." Br. in Support of Plaintiffs-Appellants' Mot. to Dismiss the Appeal as Moot and to Vacate the Adverse Rulings of the Dec. Below at 7. Therefore, Plaintiffs argue, they "no longer have a dispute with the state defendants regarding their implementation of those laws." Id. at 8.
 
 
 22
 It is true that there is no longer a dispute regarding the implementation of the fiscal assessment laws, but we agree with Defendants' argument that the laws' expiration does not moot Plaintiffs' Physician's Order Claim. In fact, Defendants argue that "Physicians continue to order changes in the level of care, and those changes are implemented by CHHAs, even after the expiration of the fiscal assessment statute." Moreover, one of the factual bases for the claim -- miscommunication and mistake on the part of both physicians and CHHAs -- has nothing to do with the fiscal assessment laws.
 
 
 23
 It is clear that the parties still sharply disagree as to whether the district court erred when it ruled that "a change directed by the patient's treating physician is not the kind of change or alteration that requires notice and a fair hearing" and declined to order Defendants to provide notice, hearing, and aid-continuing rights in such instances. Catanzano VII, 189 F.R.D. at 71 (internal quotation marks and citation omitted). The parties possess "a legally cognizable interest in the outcome" of that question, Powell, 395 U.S. at 496, since the district court's final judgment on the claim has preclusive effect on the parties, see Allen v. McCurry, 449 U.S. 90, 95 (1980). We therefore hold that Plaintiffs' Physician's Order Claim is not moot. See Davis, 440 U.S. at 631.[5]
 
 
 24
 2. Plaintiffs' Motion to Dismiss Without Prejudice
 
 
 25
 The district court denied Plaintiffs' Rule 41(a)(2) motion to dismiss without prejudice, reiterating "that changes directed by the treating physician do not require notice or a fair hearing." Catanzano VII, 189 F.R.D. at 72.
 
 
 26
 Rule 41(a)(2) provides that except where all parties agree to a stipulation of dismissal, "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). It is within the district court's sound discretion to deny a Rule 41(a)(2) motion to dismiss. Zagano v. Fordham Univ., 900 F.2d 12, 14 (2d Cir. 1990). Generally, however, a voluntary dismissal without prejudice under Rule 41(a)(2) will be allowed "if the defendant will not be prejudiced thereby." Wakefield v. N. Telecom, Inc., 769 F.2d 109, 114 (2d Cir. 1985). Factors relevant to a court's decision whether or not to grant a motion to dismiss without prejudice include:
 
 
 27
 [1] the plaintiff's diligence in bringing the motion; [2] any "undue vexatiousness" on plaintiff's part; [3] the extent to which the suit has progressed, including the defendant's effort and expense in preparation for trial; [4] the duplicative expense of relitigation; and [5] the adequacy of plaintiff's explanation for the need to dismiss.
 
 
 28
 Zagano, 900 F.2d at 14.
 
 
 29
 None of these factors warrant denying Plaintiffs' motion: (1) plaintiffs were not dilatory in bringing the motion, but did so in order to facilitate an end to the litigation; (2) the motion was not made to harass or annoy; (3) although the litigation has gone on for years, this claim has thus far not been litigated and only halting discovery has taken place; (4) relitigation of this claim would not be duplicative since it has barely been litigated at all; and (5) Plaintiffs' explanation, that they have brought the motion in order to facilitate an end to the litigation but that they wish to avoid preclusive effects of the district court's ruling on this claim, is adequate. In addition, we note that the district court granted Plaintiff's Rule 41(a)(2) motion with respect to several other claims and that the court's rationale for denying the motion seems primarily to have been that this claim had never been part of the litigation. Catanzano VII, 189 F.R.D. at 72 ("Physician-ordered changes were not at issue [after the fiscal assessment laws' enactment] and were not the basis for expansion of the class."; "It seems that plaintiffs have attempted to imagine every conceivable circumstance in which a recipient's level of care is affected in any way.... I decline to expand the scope of the injunction or the Plan to include the[se matters].").
 
 
 30
 Nor do we agree with the district court's decision to deny the motion based on its earlier determination that "a change directed by the patient's treating physician is not the kind of change or alteration that requires notice and a fair hearing." Id. at 71 (internal quotation marks and citation omitted). Whether this is the case depends on what is actually transpiring between physicians and CHHAs, and the role of the CHHAs in the aftermath of the fiscal assessment laws' expiration -- issues not ready for final judgment on the record before us or before the district court.
 
 
 31
 In sum, we conclude that Defendant will not be prejudiced by this claim because it has been litigated to such a limited extent and we hold that the district court abused its discretion in denying Plaintiffs' Rule 41(a)(2)motion to dismiss their Physician's Order Claim. We therefore vacate the court's entry of a permanent injunction and final judgment and direct the court to dismiss Plaintiffs' Physician's Order claim without prejudice.[6]
 
 III. CONCLUSION
 
 32
 For the reasons set forth above, the district court's entry of a permanent injunction and final judgment is vacated with respect to both Plaintiffs' Notice Adequacy Claim and their Physician's Order Claim. The case is remanded to the district court and the court is directed to dismiss Plaintiffs' Notice Adequacy Claim without prejudice as moot. The court is further directed to dismiss Plaintiffs' Physician's Order Claim without prejudice.
 
 
 
 NOTES:
 
 
 *
 The Honorable David G. Trager, United States District Court for the Eastern District of New York, sitting by designation.
 
 
 [1]
 In this opinion, we refer to each published decision in the Catanzano litigation with the short-form designation "Catanzano" followed by the Roman numeral corresponding to its position in the sequence of published decisions in the litigation.
 
 
 [2]
 Plaintiffs have since settled all their substantive claims against the Monroe County defendants, and the suit against the County defendants has been discontinued except for attorney's fees. The State Defendants are the sole appellees.
 
 
 [3]
 In addition, the court denied Plaintiffs' motion for summary judgment with respect to their claim that CHHAs must provide notice and hearing rights when they take actions due to concerns about the health and safety of CHHA employees, Catanzano VII, 189 F.R.D. at 70-71, and dismissed all of Plaintiffs' remaining claims without prejudice "to the extent that [they] have not been expressly addressed in this Decision and Order," id. at 73.
 
 
 [4]
 Some of the notices appended to the Implementation Plan do not concern fiscal assessment-related decisions. However, in light of Plaintiffs' argument that the expiration of the fiscal assessment laws has mooted this claim, and because they refer throughout their briefing only to the fiscal assessment-related notices, it is clear that this claim arises only "in the context of the home care 'fiscal assessment' laws," see Br. in Supp. of Plaintiffs-Appellants' Mot. to Dismiss the Appeal as Moot at 5; accord Appellants' Br. at 18-23, 41-46.
 
 
 [5]
 If the district court's statements that "recipients whose level of care is altered by their treating physician do not fall within the class here" and "[n]ever has the class been so broadly defined as to include recipients whose services have been reduced by their own physician," Catanzano VII, 189 F.R.D. at 72, could be construed to modify the class, they would render this issue moot because if such recipients are not parties, they are not bound by any ruling in this case and thus "lack a legally cognizable interest in the outcome," Powell, 395 U.S. at 496. Indeed, Defendants argue that Medicaid recipients whose home health services are reduced, terminated, or denied in accordance with their physician's orders are not part of the class and, therefore, cannot bring this claim.
 We disagree. The second clause of the class definition -- recipients "who have had their home health care suspended, denied, terminated or reduced without prior notice, right to a fair hearing and aid-continuing as mandated by 42 C.F.R. 431.200- 431.250," Catanzano II, 847 F. Supp. at 1079 -- clearly includes recipients who are in a position to bring a Physician's Order Claim. Furthermore, the district court did not expressly modify the class, nor did either party move for it to do so. Despite the district court's comments, recipients asserting Physician's Order Claims are members of the class.
 
 
 [6]
 We emphasize that our holding today does not diminish our high esteem for the way the district court has handled this case. Throughout its lengthy stewardship over this complex and contentious litigation, the court has shown extraordinary patience and a remarkably steady hand.